HENRY S. HIGGINS, APPELLANT, VS. JOHN S. DRIGGS AS ADMINISTRATOR OF THE ESTATE OF JOHN S. ADAMS, DECEASED, APPELLEE.

1. A judgment entered by the clerk in vacation ought not to be amended when it appears from the record that *no* judgment ought to have been entered.

2. An execution against an administrator should be suspended when it does not appear on its face whether it is to be satisfied out of the individual property of the defendant or out of the property of his intestate.

3. E. F. A., executrix of J. S. A., made a note by which she promised to pay to H. S. H., or his order $1,097, on demand, with interest at ten per cent., and signed said note "E. F. A., executrix of the estate of J. S. A." *Held*, That this was the note of E. F. A., and did not bind the estate of J. S. A.

4. E. F. A., executrix, having died, J. S. D. was appointed administrator *de bonis non* of J. S. A., and was sued as such on the above note. No plea, answer or demurrer having been filed, the clerk in vacation on the proper rule day, on no other proof than said promissory note, entered judgment that plaintiff "*have and recover to, of and from the defendant as administrator of J. S. A., deceased,*" the amount of said note and costs. Here the judgment stopped without saying out of whose property it was to be satisfied. Plaintiff moved to amend the judgment "so as to have it read and appear of record as against the goods, &c., of J. S. A , dec'd." This motion was refused by the Circuit Judge: *Held*, That this ruling was correct, because *on the proof before him*, the clerk ought not to have entered any judgment, either against the defendant individually or as administrator of J. S. A., to be levied of the goods, &c., of the latter, and the court ought not to amend a judgment entered by the clerk when it appears from the record that the clerk ought not to have entered any judgment. The execution commanded the sheriff "that of the goods, &c., of *J. S. D., as administrator of the estate of J. S. A., deceased,* you cause to be made" the amount of said judgment and costs. The Circuit Judge, on motion, suspended this execution : *Held*, That this ruling was right because every execution against an administrator ought to be suspended unless it clearly shows on

its face whether it is to be satisfied out of the individual property of defendant, or out of the property of his intestate in his hands to be administered.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*C. P. & J. C. Cooper* for Appellants.

The judgment in this case reads against " John S. Driggs, *as administrator of the estate of* John S. Adams, deceased," but does not add the words " to be levied of the goods and chattels of decedent." We contend that this is a valid judgment against Driggs in his representative capacity as administrator, and that it may be levied on lands, goods, or chattels of said estate of Adams as the property out of which judgment should be made, follows as a matter of law without being recited in the judgment. When judgment reads against a party as administrator of the estate of another, we admit a judgment against " defendant " simply in such a case would be a personal judgment and could not be made out of the estate, but this is not that sort of case. The only case in which the question of the validity of these judgments has been passed on by this court was in Cooper, Executor, vs. C. O. Livingston, in 19 Fla., page 684, where the court held the judgment erroneous, but upon an inspection of that judgment, page 54 original record in that cause, the court will find that the judgment was simply against " defendant," not like this judgment, against " Driggs, *as administrator* of the estate of John S. Adams, deceased." And such is the distinction to be drawn between all of the cases which decide the form of judgment against administrators; in all the cases they were not deciding the question presented here, but simply the proper technical form of judgment, without saying that the form here used

is absolutely so erroneous as to destroy the face of this judgment as a judgment against the administrators as such, which could be made out of the estate of decedent.

The cases giving proper form of judgment against administrators, but not deciding on whether a judgment similar to this is sufficient, are the following—all of them are where judgment was rendered simply against defendant, and that are held erroneous: 2 Ind., 123; 7 Sm. & Mar. (Miss.), 49; 6 Howard, (Miss.,) 93; 3 Hayward, (Tenn.,) 37; 1 How., (Miss.,) 274; 6 Iowa, 274; 15 Iowa, 23; 46 Ala., 667.

But the following cases decide positively that a judgment against a party *as* administrator of another is a valid judgment against defendant in his representative capacity, which may be levied of the property of the decedent. Gince, Admr., vs. Sellers *et al.*, 43 Miss., 52; 4 Sm. and Mar., (Miss.,) 117; 25 Ark., 190; 6 How., (Miss.,) 93, 351.

There is no sound reason why a judgment in the words of the judgment in this case should not be regarded as a judgment against Driggs in his representative capacity, and not a personal judgment.

The purpose of the judgment is but to establish the conclusion of the court as matter of record as to whom the amount is due to, from whom, and the amount; now these are all made perfectly clear by this judgment, no man examining the records would be misled by this judgment; it is plain the amount is to be made out of Adams' estate, not out of Driggs personally. This is the form of similar judgments all through the State under which innocent purchasers hold titles, and no such strict technical ruling should be made as was made by the court below. Freeman on Judgments, §§47, 50, 51, 52.

The next proposition of defendant was that the proceedings anterior to judgment did not sustain a judgment

against Driggs, as administrator. Our answer to that is, on this sort of application, that the court cannot look back of the judgment ; the court cannot try the case over again in this way ; all that matter should have been set up as defence.

The Supreme Court of Georgia has construed a similar statutory provision to that of act of 1844, under which defendant here proceeded, and has repeatedly held, you cannot examine the record back of the judgment on this sort of application. The case of Emory vs. Smith, 51 Ga., 323, is an identical case in principle and in facts with this, and there the court refused to examine the question, as to whether defendant was liable individually, in her representative capacity or at all, on motion to stay execution. See 53 Ga., 323 ; 11 Ga., 137 ; 7 Ga., 204 ; 22 Ga., 570.

But in this case there was nothing for the court to examine to ascertain any facts back of the judgment, because the purported copy of the record exhibited to the court was not certified by any officer, had no mark of authenticity about it, and appears from endorsements thereon to have been some office copy of the transcript of record in this case which went to Supreme Court some two years ago. The court ought not to have entertained it for a moment, but in arriving at his final judgment it influenced him, and he stayed this execution and all proceedings thereunder. See copy record, pages 14 to 25.

We insist that in the common counts of account stated, and money paid by plaintiff for use of defendant as executor, and the allegation in this declaration in this case that Ellen Adams, *as executrix*, promised to pay, she was only made liable as executrix, and the estate of J. S. Adams was still bound. 3 Williams on Executors, Sec. 1870–71 ; 23 Maine, 257 ; 7 Taunt., 581 ; 6 Sm. & Mar., 199 ; 6 Ala., 415.

So that an examination of the proceedings back of the judgment would show enough to support judgment and execution against Driggs as administrator of Adams to be levied of estate of Adams.

We contend lastly that the court erred in overruling appellant's motion to amend the judgment so as to add the words " to be levied of the goods and chattels of J. S. Adams," see page 35 of record. This judgment was clearly intended to be against Driggs, as administrator of Adams, and not personally ; it was a clerical error, if any error at all, to have left out those words in the judgment, and the court should have allowed the amendment. All of the cases in which judgments which should have been *de bonis testatoris* are entered *de bonis propriis*, even on appeal, have been ordered amended. 2 Ind., 123 ; 7 Sm. & Mar., 49 ; 3 Hayw., (Tenn.,) 37 ; 15 Iowa, 23 ; 46 Ala., 667.

Where a judgment is vague in its terms the court will presume it to have been intended in effect as it apparently shows on its face it was meant to be. 4 Ark., 203 ; 4 Wendell, 623.

In appellee's brief we notice a disposition to open up for review in this court the question of whether appellant had any action against appellee in first instance. We insist that that question should have been raised on demurrer to declaration, and on motion to vacate stay of execution or to amend judgment this question does not arise, certainly not in the matter staying an execution, and it is from that judgment mainly that this appeal is taken.

We merely made motion to amend as matter of precaution; we really think that the words of judgment are sufficient now, but omission of words " to be levied of goods, &c., of estate of deceased, &c.," was but clerical misprison that should be corrected at once by clerk under order of court.

*A. W. Cockrell* and *J. T. & G. U. Walker* for Appellee.

Walker, Judge of the Second Circuit, (sitting in place of the Chief-Justice, disqualified,) delivered the opinion of the court:

In Duval Circuit Court on January 2, 1882, the plaintiff filed his præcipe entitled as follows:

"Henry S. Higgins vs. J. S. Driggs, Administrator of Estate of J. S. Adams."

On the same day plaintiff filed his declaration, and with it a copy of his cause of action in the words and figures following:

"JACKSONVILLE, May 3, 1877.

"$1,097. For value received I promise to pay Henry S. Higgins or his order, on demand, one thousand and ninety-seven dollars, at the rate of ten (10) per cent. per annum.

(Signed)                    "ELLEN F. ADAMS,

"Executrix of the Estate of J. S. Adams."

At March Rules, 1882, judgment by default was entered, no plea, answer or demurrer having been filed, and on the same day a final judgment was entered, the only proof filed with the clerk being the original of the promissory note filed with the declaration.

The judgment is in the following words: "It is ordered and adjudged that the plaintiff have and recover of and from the *defendant as administrator of* John S. Adams, deceased, fourteen hundred and seven dollars 21-100, besides his costs in this behalf expended, now taxed at $3.45."

On 10th April, 1882, the clerk issued upon this judgment an execution, of which the following is a copy:

"THE STATE OF FLORIDA, }
   "County of Duval.       }

"*To all and every Sheriff of the State of Florida, Greeting:*

"You are hereby commanded that of the goods and chat-

tels, lands and tenements of John S. Driggs *as administrator of the estate of John S. Adams, deceased,* you cause to be made the sum of fourteen hundred and seven dollars and twenty-one cents, which, lately, on the 1st day of March, 1880, in our Circuit Court of Duval county, of the State of Florida, held at the court-house in Jacksonville, in and for the county of Duval, was recovered against *him* by Henry S. Higgins for damages, with legal interest thereon until paid, together with three dollars and forty-five cents for his costs by him in and about said suit in that behalf expended, whereof the said John S. Driggs *administrator as aforesaid* is convicted as appears to us of record, and that you have the same before the Judge of our said court at the court-house in Jacksonville, aforesaid, when satisfied, to satisfy the said Henry S. Higgins ————— damages, interest and costs aforesaid, and have then and there this writ.

"Witness, the Hon. J. M. Baker, Judge, as also T. E. Buckman, Clerk, and the seal of said court, at the court-house, at Jacksonville, aforesaid, the 10th day of April, 1882.

[SEAL.] "T. E. BUCKMAN, Clerk."

On December 15th, 1882, plaintiff moved the court to amend the judgment " so as to have it read and appear of record as against the goods and chattels, lands and tenements of John S. Adams, deceased."

This motion was refused by the court and the plaintiff excepted.

On 18th December, 1882, the defendant filed a petition to suspend the execution.

On January 5th, 1884, the court ordered a final suspension of the execution. To this ruling the plaintiff excepted.

The case was then brought by writ of error to the Supreme Court.

The questions for this court now to decide are—

1st. Whether the Circuit Court erred in refusing to amend the judgment.

2d. Whether the Circuit Court erred in suspending the execution.

In considering the question whether the Judge below ought or ought not to have amended the judgment, let us consider what sort of jndgment, if any, the clerk ought to have entered on the præcipe, summons, declaration and *proof* before him.

The præcipe, summons and declaration were all against " Driggs, administrator of the estate of John S. Adams," and it would follow that *upon proper proof* the judgment should have been entered against John.S. Driggs as administrator of the estate of John S. Adams " *to be levied of the goods and chattels, lands and tenements of said John S. Adams in the hands of said Driggs as administrator, to be administered.*" 19 Florida, 695, Cooper, Executor of Roberts vs. Livingston.

But did the *proof,* filed in this cause, authorize the clerk to enter up a judgment to be binding on the estate of Adams ?

If the proof authorized the clerk to enter such a judgment, then he ought to have done so, and if there was an informality in the judgment which the clerk *ought* to have entered, the court ought, on motion, to have amended it, (15 Fla., 198,) but if on the *proof* the clerk ought *not* to have entered a judgment binding on the estate of Adams, then the court below ought not to have done that which the clerk ought not to have done. A court should never lend its aid in perfecting an error which the clerk started to commit. The court will only lend its aid when the clerk has started to enter a *correct* judgment and has committed an informality in the entry.

The question recurs, would the clerk have done right, on

the proof before him, in entering a judgment against the estate of John S. Adams.

The only proof before the clerk was a note signed "Ellen F. Adams, executrix of the estate of John S. Adams."

Our rule of court, number 4, requires every promissory note sued on to be filed with the declaration. The original of the note filed with the declaration in this case was the only proof or paper which was produced and filed when the judgment was rendered.

Our statute, chapter 1938, sec. 7, declares that upon the entry of a default, in any suit for the recovery of money, *founded upon contract*, and the action is on a *written instrument for the payment of money*, the plaintiff, at any time after such default, may, on the production and filing of such instrument, cause final judgment to be entered for the amount thereof.

We take it that this language relates only to cases in which the suit is founded on a contract between the parties to the suit or the persons they represent, and where the action is on a written instrument for the payment of money by the defendant, or the person he represents, to the plaintiff or the person he represents. If this be not the meaning of said section 7, then A. may sue B. on the note of C., and on default cause the clerk to enter judgment against B.

The note sued on this case was not signed by J. S. Adams, nor by Driggs, the defendant. This is a note signed by "Ellen F. Adams, executrix of the estate of J. S. Adams," by which she, for value received, promised to pay Higgins or order on demand $1,097, at the rate of ten per cent. per annum.

Did this note bind the estate of J. S. Adams? or was it the note only of Ellen F. Adams individually? It does not appear, except from the note itself, whether the consideration of it was an indebtedness of J. S. Adams to Hig-

gins, or an indebtedness of Ellen F. Adams individually. She says in the note " for value received, I promise to pay," &c. She may have borrowed money from Higgins for her individual uses and have given this note for it. The inference from the face of the note is that *she* received the value, and for the value so received gave the note.

We are of opinion that this note does not bind the estate of J. S. Adams.

Mr. Daniel, in his work on negotiable instruments, section 292, declares the law to be as follows : " An administrator or executor *cannot* bind the decedent's estate by any negotiable instrument. If he make, accept or endorse any negotiable instrument, he will bind himself personally, even if he adds to his own name the designation of his office as personal representative. Thus, if he signs himself "A. B., executor, (or administrator) of C., or A. B. *as* executor of C., the representative terms will be rejected as surplusage."

Mr. Daniel cites a great number of authorities to sustain the law as thus laid down, and we hold that he has laid the law down correctly.

Therefore, since Ellen F. Adams, executrix of J. S. Adams, by signing the aforesaid note, even though she added after her name the words " executrix of the estate of J. S. Adams," did not bind the estate of John S. Adams, and since Driggs did not sign the note, it was wrong for the clerk, on such proof, to enter a judgment binding either Driggs personally or the estate of J. S. Adams.

And if the clerk should not have entered any judgment at all on such proof, either against Driggs personally or against the estate of J. S. Adams, surely the Circuit Judge did not err in refusing to amend the judgment so as to make it binding on the estate of J. S. Adams, as asked for by the plaintiff. For, as we have before said, the court

should never lend its aid to perfect an error which the clerk started to commit but did not complete. It will only lend its aid when the clerk has started to enter a correct judgmant but has committed an informality in the entry.

We are of opinion that the Circuit Court did not err in refusing to amend the judgment.

The remaining question is whether the Circuit Court erred in staying the execution.

Every writ purporting to be an execution ought to be suspended on application to the court, unless it shows clearly on its face out of whose property it is to be satisfied, for it is not proper to leave the sheriff in doubt on that subject, as it is unlawful for him to levy on the property of any one except by the express command of the law.

This execution commands the sheriff to satisfy it, not out of the property of *Adams* in the hands of Driggs to be administered, but out of the property of *Driggs as administrator of Adams.*

If it was the intention of the clerk who issued this execution that it should be satisfied out of the property of Adams, why did he not issue it in the common form which has been in use for ages, "to be levied of the goods and chattels, lands and tenements of Adams in the hands of Driggs to be administered?" On the contrary, if the clerk intended that this execution should be satisfied out of the property of Driggs, why did he not follow the usual form in such cases? We are left in doubt as to the meaning of this execution. We have found in the books several *judgments* rendered against "*C. D. as administrator of A. B.*," and then stopping without saying out of whose property they should be paid, but from these judgments, as far as we can learn, executions were issued in the usual form to be levied of the prop-

8

erty of deceased. But the only *execution* we have found that does not order out of whose property it is to be satisfied is found in 51 Georgia, 483, Tinsley vs. Lee. That execution is substantially the same as the one under consideration, as appears from the following copy of· it, to wit:

" We command you of the goods and chattels, lands and tenements of Thomas W. Howell, *executor of William Tinsley, deceased*, that you cause to be made the sum of $238.85, principal, and the further sum of $48.23, interest and costs, which the plaintiff lately recovered against said Thomas Howell, *executor of William Tinsley, deceased.*"

The Supreme Court of Georgia decided that this was an execution against the individual property of Thomas Howell, saying: " The addition of executor to his name without more, did not prevent the decree from binding his personal goods and chattels."

It is contended that the judgment rendered by the clerk, in the case under consideration, because it is against the defendant in his representative capacity, is equivalent to a judgment against the goods and estate of the intestate, and that this execution following the judgment is therefore good.

We answer that if this were so, the court below ought to have amended the judgment so as to put the matter beyond doubt. But we deny that such is the legal effect of the judgment. In the case of Hardy vs. Call, 16 Mass., 530, the court said : " The judgment having been exhibited to us for inspection, we find that it was rendered against the defendant *in his capacity as administrator*. It has been argued that this is equivalent to a judgment against the goods·and chattels of the intestate. But we think otherwise; * * * it is very clear that no judgment has been

·rendered against the goods and estate of Palmer, the intestate," &c.

We have found several cases, however, in which judgments rendered like the one under consideration have been held sufficient. to sustain executions against the property of the intestate, but on examination of all such judgments, it will be found that the judgments, as shown by the record, were based on *some liability of the decedent.* In such cases the courts either amended the judgments, or else considered that as done which ought to have been done, and so sustained the executions. We have a striking illustration of this in 25 Ark., 190, in case of Stone, Adm'x vs. Kaufman, where the jugdment was "that plaintiff have and recover of and from the *defendant*" ·(without adding the word "administrator.") Yet the court held that this was a valid judgment against defendant " as administratrix of Jefferson Stone in her representative capacity." And why did the court make so strange a ruling? Because in looking back of the judgment they found that the suit was instituted against her as administratrix of Jefferson Stone *on a written instrument made by him in his life time.*

When we look behind the judgment in the case under consideration, we find that the judgment is *not* based on any evidence of the indebtedness of the decedent, John S. Adams, but only on evidence of the indebtedness of Ellen F. Adams.

We cannot, therefore, reach the conclusion that there ought to have been a judgment against Driggs either out of his own estate, or out of the estate of John S. Adams.

We have a second illustration in the case of Grice, Administrator, vs. Sellers and wife, 43 Miss., 52, in which the court said: " Grice was sued as administrator, and the recovery was .against him in that capacity. Execution *de bonis propriis* could not emanate on this judgment. It

would have followed the line of safe precedents, and we would by no means encourage a departure from it, to have added ' to be levied of the goods and chattels of his intestate, N. Kennison, in his hands to be administered,' but the judgment being against him *as administrator*, necessarily on such judgment the execution must go out against him as administrator, and be satisfied of the goods of the intestate."

The Mississippi Supreme Court, going behind the judgment in this case, found that Grice was sued as administrator, *on a note given by his intestate* and *therefore* concluded the judgment ought to be satisfied out of the estate of the intestate.

We think if that court had found that the judgment was *not* based on any indebtedness of the intestate, it would never have concluded that it should be paid out of the estate of the intestate. If the Supreme Court of Mississippi meant to say that every judgment against the defendant as administrator must, *under all circumstances*, be satisfied out of the estate of the decedent, we must respectfully differ from it.

We know that judgments are often rendered against defendants as administrators to be satisfied, sometimes *de bonis testatoris*, at other times *de bonis testatoris* as to the debt and *de bonis propriis* as to the costs, and sometimes *de bonis testatoris* when assets of deceased shall come to the hands of the administrator, &c.

And if the suit on this note had been against Ellen F. Adams, as administratrix, the judgment might have been entered against her to be satisfied *de bonis propriis*, the words " as administrator being rejected as surplusage " in the judgment as in the note sued on.

We have a third illustration in the case of Neely *et ux.*, Administrator and Administratrix, vs. The Planter's Bank.

In this case of Neely vs. The Bank, the judgment was that plaintiff's recover from *defendants, administrator and administratrix of deceased.* It was held by the court, (4 S. & M.,) that the judgment was not against the defendants *individually,* but in their representative capacity. But why did the court thus hold ? Because by going back of the judgment they found that the suit was brought against defendants in their representative capacity, and the cause of action was a promissory *note endorsed by the decedent.*

But in the case of Higgins vs. Driggs, under consideration, the cause of action was *not* a note endorsed either by decedent or by Driggs, but was a note of Ellen F. Adams, for the payment of which neither the estate of Adams, nor Driggs, was bound, so far at least as is disclosed by the record.

In conclusion, we are of opinion that whenever an execution, like the one under consideration, or any execution against an administrator which does not show out of whose property it is to be satisfied, is presented to the court, on application to stay it the court should suspend it until the judgment on which it issued can be inspected.

If, on inspection of the judgment, the court finds that the execution can be amended from it, then the amendment should made.

But if, on inspection of the judgment, the court finds that the execution cannot be amended from it, then the court should continue the suspension of the execution until opportunity be given to amend the judgment by inspection of the record.

If, on inspection of the record, the judgment cannot be amended by it, then the court should grant a final judgment staying the execution.

Such was the course pursued by the Circuit Court in the case under consideration. We find no error in its judgment. It is affirmed.