# MARCH, 1941.

STATE EX REL., HARRIETT W. ARTHUR, ET AL., RELATORS, v. AUBREY R. HAMMETT, JUDGE, RESPONDENT.—151 S. W. (2d) 695.

Kansas City Court of Appeals. May 5, 1941.

*Baker & Baker, Clark, Boggs, Peterson & Becker* and *Howard B. Lang, Jr.,* for relators.

930

*J. L. Milligan, C. B. Kimberly, Jack H. Rothschild* and *Roy D. Williams* for respondent.

SHAIN, P. J.—This case involves the question of incorporation of a drainage district. The cause was before this court for review at the October Term, 1940, and an opinion was written by Commissioner Campbell. The opinion was duly adopted by this court and handed down on September 26, 1940. Thereafter, motion for rehearing was filed and for the first time the question of our jurisdiction was raised. By reason of the jurisdictional question this court granted a rehearing and additional briefs were filed and the cause was re-argued and resubmitted at the March Term, 1941, of this court.

After reconsideration, we conclude that this court has jurisdiction to act in this matter and we adopt the opinion heretofore written by Commissioner Campbell as the opinion of this court and we will follow with paragraphs discussing and stating our conclusions on the question of jurisdiction.

### ORIGINAL PROCEEDING IN PROHIBITION.

Relators brought this proceeding to obtain our writ prohibiting the respondent from entering a judgment *nunc pro tunc* incorporating the Pearson Drainage District. Following the issuance of a pre-liminary rule respondent filed return and relators joined issue in reply. The pleadings presented issue of both law and fact. There-upon Honorable EDGAR J. KEATING was appointed special commis-sioner to hear the evidence and to report his findings of fact and conclusions of law to the court. The commissioner heard the evidence and reported his findings of fact and conclusions of law. The suffi-ciency of the application return and reply are not questioned. As neither party, save as herein stated, excepted to any finding of fact we will consider the findings to which exceptions were not taken to be correct.

The findings state that owners of land in Howard County, Missouri; filed in the circuit court of that county petition and articles of as-sociation for the incorporation of the Pearson Drainage District on March 28, 1928; that an alleged decree of incorporation was entered on June 1, 1928. Thereafter a board of supervisors for the general administration of the affairs of the District was appointed, a plan of reclamation adopted, a board of commissioners to inspect the Dis-trict and assess benefits and damages appointed, bonds to finance the payment of the work of said improvements issued, the improve-ments constructed and the District became and continued to operate as a drainage district. At the time of filing the petition objections thereto were made, and objectors have ever since brought and main-

tained actions attacking the validity and existence of the District, including *quo warranto* proceedings pending at the time of the hearing. On September 24, 1930, the circuit court of Howard County entered its first decree *nunc pro tunc* making certain corrections in the original decree concerning the publication of the notice of application for incorporation of the District. On October 18, 1937, nearly ten years after the date of the alleged decree of incorporation, the Pearson Drainage District in its own corporate name filed its original petition in the circuit court of Howard County seeking a second decree *nunc pro tunc*, which is the one involved in this action. A hearing was had upon the original petition for *nunc pro tunc* order, and thereafter, by leave of court, an amended petition was filed, which recited the filing of the articles of association and the petition for the incorporation of the Pearson Drainage District, the recitals therein and further alleging that the following record entries appear upon the docket of the Judge of the circuit court of Howard County as of June 1, 1928:

"Proof of publication of notice to persons interested made and filed.

"Petitioner given leave to amend petition by interlineation. Amendment made.

"Application heard and granted and decree rendered creating district as prayed for, to be known as Pearson Drainage District," and that the following record entries appear in the record of the circuit court of Howard County:

"June 1, 1928. Application for Articles of Incorporation for Pearson Drainage District. It is ordered by the court that petitioners be and they are hereby given leave to amend by interlineation an amendment made. Application heard and granted creating district as prayed, to be known as Pearson Drainage District."

The amended petition further alleged that there appears in the files of the cause a paper which purports to be a certified copy of a decree of incorporation of the district as of June 1, 1928. The amended petition then alleged that this decree through negligence, inadvertence and misprision, was not entered in the record of the court in the office of the clerk thereof; that the first amendment to the decree of incorporation was entered *nunc pro tunc* on September 24, 1930, and concluded with a prayer for:

"A decree in accordance with the actual finding of the court be entered and transcribed as of June 1, 1928, and for all further and proper relief."

Upon the filing of the amended petition the court took the cause under advisement and subsequently announced that he would enter a new judgment and decree *nunc pro tunc* based upon the alleged certified copy of the records of the judgment which had theretofore, through negligence, inadvertence and misprision, not been entered.

Thereupon these relators, who had not been served with any notice of the pending proceedings, and who had not participated in them, filed their application for writ of prohibition in this court. Their petition alleged that the respondent without warrant of law, unless prohibited, will abuse his discretion and act in excess of his jurisdiction for the following reasons:

"(a) Because proper notice has not been given to interested parties of the filing of the original application for the incorporation of the proposed Pearson Drainage District, so that the court was without jurisdiction to enter an order for incorporation of said drainage district on the 1st day of June, 1928, and hence the court now is without jurisdiction to enter an order *nunc pro tunc.*

"(b) Because there is no individual or legal recognizable entity acting or to act as petitioner or movant.

"(c) Because there is no petition before the court for *nunc pro tunc* order or decree filed by any of the signers of the original petition seeking the incorporation of the drainage district to be known as Pearson Drainage District, nor by anyone representing them, nor by any land owner owning land within the purported district.

"(d) Because no process or notice of said proceedings has been served upon the landowners to be affected, who are necessary parties to said proceeding.

"(d) Because there is no evidence furnished by some entry in the Clerk's minute book, in the Judge's docket, or in some paper required by law to be filed and found in the papers of the case which gives to the court jurisdiction to enter a judgment for incorporation *nunc pro tunc.*

"(f) Because it appears that exceptions were filed to said application which have never been disposed of and the cause was not ripe for judgment on June 1, 1928, and under the statutes in such cases made and provided, the court was without jurisdiction to enter a judgment of incorporation on that date with the exceptions undisposed of, and hence the court is now without jurisdiction to enter a judgment *nunc pro tunc.*

"(g) Because the entering of said order *nunc pro tunc* by the respondent is a palpable abuse of discretion and an unwarranted exercise of power."

In his return respondent denies that he will abuse his discretion and act in excess of his jurisdiction for the following reasons:

"a. Because proper notice has been given of the original application for the incorporation of the Drainage District.

"b. Because the Corporation is the only proper petitioner to correct the records of the Circuit Court.

"c. Because the said District presented said petition and that it is the only entity who could properly petition the Court for a *nunc pro tunc.*

"d. Because by an order of publication all parties were before the court; that the Relators herein appeared in various proceedings by those under whom they claimed.

"e. Because the evidence furnished by the entry upon the Clerk's minute book and the Judge's Docket and in the papers filed in the case were ample and required the Judge to enter the decree *nunc pro tunc.*

"f. That the incorporation of the District after the filing of the exceptions was in effect an overruling of said exceptions and that Relators herein as represented by their predecessors in title received money from said District.

"g. That the entering of the order *nunc pro tunc* is not an abuse of discretion and an unwarranted exercise of power."

The facts further show that in February, 1930, John E. Stapleton and Florence Stapleton executed an instrument in which it was recited that they were the owners of certain tracts of land designated in the articles of association and petition for the creating of Pearson Drainage District; that in the decree incorporating said district rendered June 1, 1928, the same land was designated as certain numbered tracts; that in consideration of the benefits to accrue to said land through the execution of the plan of reclamation they waived all notices required by law to be given as incident to the creation of said district, all defects and omissions of jurisdictional findings of the circuit court in its decree incorporating said district, all errors in the description of the boundary lines of said district expressly waived all rights they possessed to raise any objection to the validity of the proceeding incident to the creating of said district and consented to the assessment of benefits and damages to their land. In October, 1930, Paul White, Kate C. White, Edgar C. Nelson and Celeste A. Nelson executed an instrument in legal effect the same as the one executed by the Stapletons. These instruments were filed for record in the recorder's office of Howard County in November, 1930. It was further shown that relator John E. Stapleton acquired his land by inheritance from his father John E. Stapleton on November 11, 1932; that relator Harriett W. Arthur obtained her land from her father Paul White July 2, 1930; that Paul White obtained his land from William Hocker by inheritance in 1929; that Paul White and Kate White are predecessors in title of Harriett W. Arthur.

The report further states that expert engineers for both relators and respondent testified that they prepared plats of the land from data obtained from sources other than the description contained in the original petition for incorporation. These witnesses were in agreement that the descriptions in the original petition did not, without aid from other sources, describe a completely closed boundary for the proposed district; that such descriptions contained numerous errors as to starting points, directions, distances and monuments;

that certain descriptions overlapped and certain tracts within the proposed district were not described and certain tracts lay without the boundaries of the district. Each of these witnesses testified that the descriptions in the original petition were so erroneous that a skilled engineer and surveyor could not, without field work, such as examining the fences and other marks of occupancy and by arbitrarily changing the descriptions contained in the original petition to conform to the descriptions obtained by such field work, locate the district boundaries and plat a contiguous tract of land.

There was introduced in evidence a writing upon which was endorsed the certificate of the circuit clerk stating the writing was ''a true and complete copy of the decree of the Howard County, Missouri, Circuit Court entered of record on 1st day of June, 1928, organizing and incorporating the Pearson Drainage District, as the same appears of record in this office.'' The instrument was marked filed for record by the recorder of deeds on March 18, 1929. The certificate was not dated. The testimony of the clerk, (she was also recorder,) was to the effect that counsel for the drainage district on March 18, 1929, gave her several copies of the instrument and requested her to certify them; that said counsel then requested her to place the recorder's stamp upon one copy so it could be recorded in the recorder's office, but that he did not want it recorded; that she kept the instrument in her desk for several years and then placed it with the papers in the drainage district case. The instrument was not entered upon the records of the court and there was no evidence the court ever saw it.

The commission arrived at the conclusion the court on June 1, 1928, lacked power to render the judgment incorporating the district and for that reason respondent was without jurisdiction to enter the decree *nunc pro tunc* which he intends unless prohibited.

This conclusion was based on the fact, and other facts, that the petition upon which the decree of June 1, 1928, was based failed to describe a contiguous body of land; failed to locate the boundary lines of the district; that an expert engineer could not locate the boundary lines without arbitrarily changing the description contained in the original petition.

The drainage act now Chapter 64, Article 1 Revised Statutes 1929, is a law unto itself, ''and should be strictly followed and so construed independent of the civil code.'' [In re Mississippi and Fox River Drainage District, 270 Mo. 157, 192 S. W. 727.] Section 10743 provides the articles for the incorporation of a drainage district shall state, ''the boundary lines of the proposed drainage district'' and ''contain prayer, praying that the lands and other property described therein be declared a drainage district . . .'' The articles of association and petition must comply substantially, if not strictly, with the provisions of the statute; and if they fail in such respect a judg-

ment based thereon is void. In the absence of statutory authority the circuit court though a court of general jurisdiction was without power to enter a judgment incorporating a drainage district. The drainage act conferred that power and prescribed the procedure to be followed in exercising the power. The record before the court when the judgment of June 1 was rendered failed to show the boundary lines of the proposed district, was so defective in its recitals that an expert engineer could not locate the land which the petitioners sought to have included in the proposed district. It is plain the judgment incorporating the district was in violation of the provision of section 10743 *supra* and for that reason was utterly void. [State ex rel. v. Riley, 118 S. W. 647, 654; State ex rel. v. Sevier, 73 S. W. (2d) 361, 373.]

It has been ruled in this state that a judgment based upon a petition which fails to state a cause of action is not void but if a judgment is based upon a petition the allegations of which show plaintiff is not entitled to judgment then the judgment is void. [Coombs v. Benz, 114 S. W. (2d) 713.]

We conclude the allegations of the petition for incorporation disclosed that petitioners were not entitled to a decree incorporating the district and hence the judgment was void. [City of St. Louis v. Glesson et al., 93 Mo. 33; United Cemeteries Co. v. Strother et al., 119 S. W. (2d) 762.]

As the judgment was void the court was without jurisdiction to enter the decree *nunc pro tunc* sought by the district.

We deem it unnecessary to discuss the other reasons assigned by the commissioner for holding the judgment void.

The respondent excepted to the finding that the boundaries of the District did not close. The evidence supports the finding and it would not support a finding to the contrary.

The respondent contends the relators through laches are estopped to question the due incorporation of the district. The predecessors in title of the relators executed the waivers above mentioned, and hence the latter are in the same legal position as the former with respect to laches and estoppel. Relators so far as this record shows made no objection to the improvement, remained silent concerning the issuance of bonds by the District; the District functioned as a corporation for about 10 years before relators questioned its existence as an entity; and during that time, it may be assumed, received benefits from the activities of the district.

The waivers may have been sufficient to end any question concerning jurisdiction of the person of those who executed the waivers but jurisdiction of the subject matter of an action is conferred by law and cannot be conferred by consent. It was lack of jurisdiction of the subject matter namely the incorporation of the District, which voided the judgment of June 1, 1928.

The respondent in support of his contention that relators are estopped cite, among other of similar import, the case of State ex rel. v. Missouri Utility Company, 331 Mo. 337, 53 S. W. (2d) 394. The respondent in that case had a franchise to use the streets of the city of Sikeston to carry on the business of supplying electric light and power to the inhabitants of said city, which franchise expired on December 16, 1922. Thereafter for a period of almost 9 years the city each year levied and collected taxes on respondent's property in the city, and each year collected a license tax on respondent's right to carry on its business and issued a permit to respondent authorizing it to engage in such business, the last permit extending to July 1, 1932. On these facts the court held that when the franchise expired in 1922 the city had the right to order the utility "off the streets;" that under the facts stated "the doctrine of laches and estoppel apply, and relator will not now be heard to say that respondent is without right or authority" to carry on its electric business in the city. The doctrine of these cases is well enough but it does not rule the case at bar.

This is plain when the nature of a *nunc pro tunc* proceeding is considered. The district presented in the *nunc pro tunc* proceeding the single question namely, what was the judgment actually entered on June 1? In other words the court in 1937 was called upon to judicially say that it rendered a certain judgment on June 1, 1928; and no other question was in issue. [Burton v. Burton, 228 Mo. 531, 323 S. W. 476.] Manifestly no act or omission of relators or their predecessors in title would tend to show the terms of the judgment actually rendered on June 1.

It is further suggested by respondent that it would be a fraud under the facts in this case to allow relators "to upset the District and cancel the bonds." It is sufficient to say of this insistence that no bond holder is a party to the instant case; that the result of this action will not deprive the bond holders of any right. The question concerning the right of a bond holder as against the district could not have been is issue in the *nunc pro tunc* proceeding nor in the instant case.

The question of our jurisdiction has been raised and is before us for our determination. In State ex rel. Buckner v. Ellison, 277 Mo. 294, the Supreme Court of Missouri re-announced the doctrine. "That the sufficiency or insufficiency of the merits in a Judge's docket to justify the court in correcting its record by an order *nunc pro tunc* is a question of evidence rather than one of jurisdiction."

In the opinion in the above case the court, l. c. 301, states as follows:

"In the case of Collier v. Lead Co., 208 Mo. 246, l. c. GRAVES, J., speaking for Division One, said:

"If it appears that the court has jurisdiction of the subject-matter and of the parties, as shown in this case, a *nunc pro tunc* judgment

*cannot be attacked in a collateral proceeding on the ground that there was no evidence to support it."*

The following propositions have also become well settled by previous ruling of this court, to-wit:

"A court may by an appeal lose jurisdiction of a cause, but it does not thereby lose jurisdiction over its own records. At any subsequent term and even after an appeal has been taken the court which has jurisdiction of the record has jurisdiction to entertain a motion for correction of its judgments by *nunc pro tunc*. (Johnston v. Ragan, 265 Mo. 420, 1. c. 441, and cases therein cited; Exchange National Bank v. Allen, 68 Mo. 474, 1. c. 486; DeKalb County v. Hixon et al., 44 Mo. 341.)

"The purpose of the use of the writ of prohibition is 'not to correct errors, but to prevent a usurpation of jurisdiction.' (State ex rel. Graham v. Seehorn, 246 Mo. 541, 1. c. 550; State ex rel. v. Stobie, 194 Mo. 14, 1. c. 45 and 52, and cases therein cited.)

"It is the very right to hear, determine and decide, whether rightfully or wrongfully, that we denominate jurisdiction. [State ex rel. Johnson v. Withrow, 108 Mo. 1."] (Italics theirs.).

We conclude it to be the universal rule in this State that a circuit court has, as to all valid judgments that have been rendered in said court, the right to correct its record by *nunc pro tunc* order. Further no appellate court can anticipate that such court is going to act erroneously in the matter and restrain action by writ of prohibition.

We conclude that the case at bar is clearly distinguished from State ex rel. Buckner v. Ellison, *supra,* and distinguished from all other cases wherein the rule therein has application.

This court is holding herein, *supra,* that there has never been a lawful and valid judgment creating the herein designated drainage district. In other words, that the judgment of June 1, 1928, "was utterly void." It follows that there is no existing valid judgment upon which to base a *nunc pro tunc* judgment.

It is against fundamental principles of law to do a thing indirectly that cannot be done directly. There is no method of procedure that can give life and validity to an utterly void judgment. A *nunc pro tunc* order or judgment cannot of itself create a drainage district.

The opinion in this case is not based upon any theory that prevents the circuit court from proceeding *nunc pro tunc* in jurisdiction of the subject matter and the parties.

Our conclusion rests upon the ground that the circuit court has no jurisdiction to by *nunc pro tunc* or otherwise resurrect and give life and validity to an utterly void judgment. Our conclusion is based upon the power of an appellate court of general jurisdiction to prohibit the circuit court from acting in a matter wherein it has no jurisdiction to act.

From a judgment creating a drainage district there is no appeal. For this court to hold that, by such procedure as is herein before us

for review, a subdivision of the State could be created and given lawful existence, would violate the fundamental principles of judicial procedure. Prohibition lies to prevent a court from making an order it has no jurisdiction to make. [State ex rel. Riggs v. Seehorn, 344 Mo. 186, 125 S. W. (2d) 851.]

Holding as we do that the judgment of June 1, 1928, was void, it follows that respondent lacked power to render the judgment in the *nunc pro tunc* proceeding which he will render unless prohibited.

The preliminary rule is made absolute. *Bland, J.,* concurs in separate opinion. *Cave, J.,* not sitting.

### CONCURRING OPINION.

BLAND, J.—The petition for the incorporation of the drainage district discloses that the petitioners were not entitled to a decree of incorporation, hence the decree was void for lack of jurisdiction in the court. It is well established that a judgment which should not have been entered because the court lacked jurisdiction and, therefore, is void, cannot be corrected *nunc pro tunc.* The court, not having jurisdiction in the first place, could not obtain it by means of a *nunc pro tunc* proceeding. [Higgins v. Driggs, 21 Fla. 103; Freiman on Judgments (3 Ed.), p. 311.]