[Civ. No. 7176. Fourth Dist. Oct. 16, 1964.]

CITY OF COLTON, Plaintiff and Respondent, v. CITY OF RIALTO et al., Defendants and Appellants.

McCabe & Saevig, Roger A. Saevig, Theodore A. McCabe and Ward O. Mathews, City Attorney, for Defendants and Appellants.

Hutton & Edwards, Lonergan & Jordan, O'Melveny & Myers, Pierce Works, William D. Moore and Marshall A. Rutter for Plaintiff and Respondent.

BROWN (R. M.), J.*—This is an appeal by appellants from a judgment granting a petition for writ of mandate, declaring certain annexations of appellants to be void, declaring an ordinance respecting one of said annexations to be void, and commanding appellants to take all necessary steps to vacate, set aside and expunge the record of filing of the certified copy of the ordinance here declared void.

The action was commenced by the City of Colton on July 7, 1961, by the filing of its pleading entitled "Petition for Alternative Writ of Mandate or Review and Order to Show Cause." The City of Rialto was the only respondent named therein, and it subsequently moved to quash service, which motion was denied, and also demurred on the ground that the petition did not state facts sufficient to constitute a cause of action, and that there was a defect or nonjoinder of parties respondent in the failure to name the city council and the city clerk.

On October 6, 1961, the City of Colton filed a complaint in quo warranto to test the validity of Rialto Annexation No. 52. On February 14, 1962, the City of Colton filed its amended petition setting forth the name of the City Clerk of the City of Rialto, Merritt Cornell, and the City Council of the City of Rialto.

Prior to this time, on July 5, 1960, the City of Rialto, by Resolution No. 824, initiated Rialto Annexation No. 49 to annex certain uninhabited territory. Prior to August 15, 1960, the date set for hearing protests to this annexation, the owners of more than one-half of the value of the territory to be annexed had filed written protests and proceedings under Rialto Annexation No. 49 were terminated. On October 26, 1960, the city council passed the first reading of Ordinance No. 446 disapproving No. 49. Then on December 6, 1960, the City Council of the City of Colton initiated West Colton Annexation No. 15 seeking to annex substantially the same territory as Rialto Annexation No. 49. On February 9,

---

*Assigned by Chairman of Judicial Council.

1961, Rialto petitioned the trial court for a writ commanding the City of Colton to terminate No. 15 for the reason that it was prematurely instituted as the necessary ordinance No. 446 finally disapproving No. 49 had not first been passed by the City of Rialto; judgment thereupon was entered on March 6, 1961, directing Colton to terminate No. 15 and requiring Rialto to complete adoption of Ordinance No. 446, both of which were complied with.

On April 5, 1961, Rialto adopted three resolutions to initiate, respectively, Rialto Annexations Nos. 51, 52 and 53, reciting that they were adopted pursuant to petitions by property owners, but, in fact, no such petitions had been filed. The territories covered in these annexations were included within the previous Rialto Annexation No. 49 and proceedings to annex these territories were commenced within one year following August 15, 1960, which was the date protests were heard against Rialto Annexation No. 49.

On May 15, 1961, the date set for the protests to be heard on Rialto Annexations Nos. 51, 52 and 53, the City of Rialto determined that majority protests had been filed with respect to Nos. 51 and 53, and terminated proceedings on said annexations.

Rialto Annexation No. 52 remained, and the applicable assessment roll showed the total assessed value of the territories included therein to be $19,292. Written protests by private owners owning property within that territory having an assessed value totaling $10,742 were filed prior to the date for hearing the protests, May 15, 1961. Despite such protests, Rialto continued the hearing to June 5, 1961. During this continuance period, an additional protest by an owner of property in Rialto Annexation No. 52 valued at $2,660 was filed. At the June 5, 1961 meeting, Rialto approved its Annexation No. 52 by introducing Ordinance No. 457, and on June 10, 1961, within five days after its introduction, said city council adopted that ordinance.

On May 2, 1961, the City Council of the City of Colton adopted a resolution declaring that proceedings had been initiated on West Colton Annexation No. 16, which included substantial portions of the Rialto No. 49 territories and overlapped and conflicted with Rialto No. 52. In a report of the San Bernardino County Boundary Commission the boundaries of West Colton Annexation No. 16 were approved. On June 20, 1961, a protest hearing on West Colton No. 16 was held at which the city council found that the protests were insufficient; it then introduced Ordinance No. 1092 approving

No. 16, which ordinance was passed and adopted on June 27, 1961.

Colton's petition contends that the Rialto Annexations Nos. 51, 52 and 53 are invalid because said annexations include territory within No. 49 and proceedings were commenced within one year of termination of No. 49; that Nos. 51, 52 and 53 are invalid because said annexations were purportedly initiated pursuant to property owner petitions but such petitions were never filed, and also because said annexations were initiated prior to submission to the county boundary commission; that Ordinance No. 457 approving No. 52 was void because it was adopted within five days from its introduction; and that No. 52 was terminated by majority protest. It is also contended that West Colton Annexation No. 16 is lawful and valid in all respects.

Rialto filed a motion to dismiss, an answer, and a demurrer. The motion to dismiss incorporated a copy of a certificate of the Secretary of State certifying that a certified copy of Rialto Ordinance No. 457 was filed July 12, 1961, and the motion alleged: that neither mandamus nor certiorari will lie to review a completed annexation proceeding; that the council and the clerk were not made parties to the action until the filing of the amended petition on February 12, 1962; and further, that the proper method to test the validity of a completed annexation is quo warranto and such an action was pending. The answer alleged that between May 15, 1961, and June 5, 1961, a written protest previously filed was withdrawn, thereby reducing the protests to Rialto Annexation No. 52 to $9,552, or less than half of the total assessed value of $19,212; and that the additional protest to Rialto Annexation No. 52 representing $2,660 valuation was not properly filed and did not contain a proper description of the property. The answer denies that a majority protest was filed in connection with Rialto Annexation No. 52, and alleges that a certified copy of Ordinance No. 457 was filed in the office of the Secretary of State on July 12, 1961, thus completing No. 52.

The evidence in the proceedings was introduced by stipulation of the parties. The trial court summarized the evidence in its opinion as follows:

"On April 5, 1961, Rialto, by three separate resolutions, commenced three separate annexations designated respectively as Annexations Nos. 51, 52 and 53. The lands included within these annexations had been substantially within the

territory previously attempted to be annexed by Rialto as 'Annexation No. 49.' This latter proceeding had been terminated by a majority protest on August 15, 1960, and Rialto had thereupon introduced and given first reading to its Ordinance No. 446 for the purpose of disapproving such annexation. No further action was taken by the City Council to effect and complete the adoption of Ordinance No. 446 until the judgment of this court on March 6, 1961, in action No. 104633, which commanded and required that the City Council of Rialto proceed to complete the adoption of such ordinance by giving second reading thereto. This was done on the date of judgment, i.e., March 6, 1961, and the ordinance, by its terms, became effective thirty days thereafter.

"In December, 1960 the City of Colton initiated proceedings to annex properties, a substantial portion of which had been included within Rialto Annexation No. 49. This annexation by Colton was designated as 'West Colton Annexation No. 15.' At this time Rialto had not given second reading to Ordinance No. 446. Action 104633 was then filed in this court, and, as hereinbefore stated, Rialto was required to complete the adoption of that ordinance. By the same judgment, the court ordered the issuance of peremptory writ of mandate requiring Colton to terminate and cease all proceedings under 'West Colton Annexation No. 15,' and declared such proceedings were 'invalid, null, void and of no legal effect.' It was, apparently, the theory of the court in action No. 104633 that the initiation of West Colton Annexation No. 15 was premature, since Rialto had not then completed the adoption of Ordinance No. 446 disapproving its Annexation No. 49. Colton complied with this judgment.

"On April 10, 1961, and after the effective date (by its terms) of Rialto Ordinance No. 446, the City Council of Colton adopted Resolution No. 2150, and, on May 2, 1961, Resolution No. 2159, initiating annexation proceedings designated 'West Colton Annexation No. 16' upon substantially the same property previously included in its attempted Annexation No. 15.

"Upon protest hearings of Rialto Annexations Nos. 51, 52 and 53, on May 15, 1961, it was determined by the Rialto City Council that a majority protest had been filed against Annexations Nos. 51 and 53, and the Council determined that 'no action' was to be taken with reference to these two annexations. There was discussion concerning the sufficiency of protest as to Annexation No. 52, and the hearing was con-

tinued for further consideration by the City Council, upon that annexation only, to June 5, 1961, at which time the Council found that a majority protest had not been filed, and proceeded to the introduction of Ordinance No. 457. This ordinance approved Annexation No. 52, was passed and purportedly adopted on June 10, 1961.''

The trial court's opinion upheld the contentions of the City of Colton. The trial court filed its findings of fact and conclusions of law and judgment was entered pursuant thereto. It adjudged that Rialto Annexations Nos. 51, 52 and 53 were illegal, null and void from their inception; that Ordinance No. 457 was likewise null and void and of no force; that West Colton Annexation No. 16 (which included substantially all of the territory included within each of Rialto Annexations Nos. 51, 52 and 53 and was substantially identical to the territory which was the subject of Rialto Annexation No. 49) was legal and valid in all respects; ordered that a peremptory writ of mandate issue commanding the City of Rialto to vacate and set aside all proceedings with respect to Nos. 51, 52 and 53, and to take all necessary and proper steps to expunge the record in connection with the filing of the certified copy of Ordinance No. 457 in the offices of the Secretary of State.

With respect to Rialto Annexation No. 52, the court particularly found that a majority written protest had been filed against the annexation and that the finding by the City of Rialto that a majority written protest had not been made was untrue and contrary to the undisputed facts. The court also found that Rialto Ordinance No. 457 approving Rialto Annexation No. 52 was introduced before the city council on June 5, 1961; that on June 10, 1961, and within five days following its introduction, the City of Rialto purported to pass and adopt said ordinance, and on June 12, 1961, it sent a certified copy of said ordinance to the Secretary of State.

The contention of appellants on this appeal, and the issue on this appeal is the validity of a judgment granting a writ of mandate to annul a completed annexation. Appellants further contend that the action of quo warranto, already on file in the court below, was and is the only remedy available to respondent. Although the appeal was taken from the entire judgment, appellants appear to have abandoned any attack on the correctness of the trial court's findings and urge that the trial court had no jurisdiction to issue a writ of mandate in these proceedings. They have argued that the original

petition was ineffective because it was directed only to the City of Rialto, and refer to *Wine* v. *Council of City of Los Angeles,* 177 Cal.App.2d 157 [2 Cal.Rptr. 94], in which there was a comparable situation of an amendment to the original petition. There, the court stated at pages 168-169: "It is the general rule that amended pleadings relate back to the time of filing the first pleading. But that principle has no application to the problem here posed. . . . Under such circumstances the doctrine of relation back is wholly inapplicable. It cannot be used to undo that which has already been done."

The respondent urges that Rialto Ordinance No. 457 was not validly adopted and never became effective, nor has the Rialto Annexation No. 52 been completed. The trial court found: "Rialto Ordinance No. 457 is, and ever since its purported adoption has been, void. Said Ordinance No. 457 does not, and cannot, form the basis for the assertion of any right under the law to annex any territory to the City of Rialto."

Section 36934 of the Government Code provides that ordinances of the type here in question "shall not be passed within five days of their introduction." This section also applies to resolutions granting franchises. Thus, *San Pedro etc. R.R. Co.* v. *City of Long Beach,* 172 Cal. 631, 634 [158 P. 204], clearly and correctly held that where an ordinance or a franchise resolution was purportedly adopted in violation of the five-day limitation contained in what is now section 36934, such an ordinance or resolution is void. Section 36937 provides that ordinances take effect 30 days after their "final passage." However, where an ordinance has never been validly adopted, it seems axiomatic that such an ordinance can never become effective—at least without further and proper action of the city council.

In *County of Los Angeles* v. *City Council of City of Lawndale,* 202 Cal.App.2d 20 [20 Cal.Rptr. 363], the annexing city attempted to adopt an emergency ordinance approving the annexation. The purported adoption took place on the same day as the introduction. The District Court of Appeal struck down the urgency clause and held: "The ordinance, if otherwise valid, did not take effect until September 1, 1960, 30 days after its adoption (Gov. Code, § 36937), and the filing of a certified copy thereof with the Secretary of State on August 3, 1960, was premature and in violation of the provisions of Government Code, section 35316." (P. 26.)

The court further held that the ordinance was not otherwise valid, stating at pages 26-27: "It further appears that the ordinance of annexation was first introduced in the city council on August 2, 1960, and was adopted on the same date. Section 36934 of the Government Code requires a waiting period of five days from the date of the introduction of such an ordinance, it not being an urgency measure, and the date of its passage. In adopting the annexation ordinance in violation of the clear mandate of the law, the city council of respondent city acted in excess of the power granted by the Legislature in annexation proceedings. Such ordinance was void and could not have been the basis for the assertion of any right under the law to annex territory."

 Section 35316 of the Government Code provides that when an ordinance approving annexation becomes "effective," the city clerk shall transmit a certified copy of the ordinance to the Secretary of State, and after that is done the annexation proceedings are complete (§ 35318). But here, the ordinance, No. 457, never became "effective" because the ordinance was never validly passed nor adopted by the city council and thus, no such ordinance was ever transmitted to the Secretary of State and Rialto Annexation No. 52 was never complete within the meaning of section 35318.

 It must be noted that in the present case the trial court's decision was that Rialto Annexation No. 52 was void in its inception and in view of the additional finding that No. 52 met with a majority protest, the writ of mandate was properly issued declaring the proceedings void and requiring appellants to take no further action.

Rialto claims that proceedings for No. 52 were "complete" and therefore quo warranto is the sole remedy.

In *American Distilling Co.* v. *City Council of City of Sausalito,* 34 Cal.2d 660, at page 667 [212 P.2d 704, 18 A.L.R.2d 1247], the court said: "Quo warranto has been invoked or designated as the appropriate remedy in cases where annexation proceedings have been completed and the municipal corporation or district is exercising control over the territory. [Citations.] But where the annexation proceedings were not completed at the time relief was sought the courts have entertained petitions in mandate or certiorari. [Citations.] It is thus apparent that when the remedy by quo warranto has not matured it is not deemed plain, speedy and adequate for the purpose of controlling the performance of a statutory duty. And since mandate appeared to be the only effective

remedy available to the petitioner by which performance of the legal duty could be procured, the trial court did not abuse its discretion in granting the writ.''

In *Hazelton* v. *City of San Diego,* 183 Cal.App.2d 131, 135 [6 Cal.Rptr. 723], the court stated: ''Where the annexation proceedings have not been completed at the time an action is commenced to test their validity, a writ of review is available to a private citizen within the area. [Citations.] However, where, as here, the proceedings have been completed and the city has been and is exercising dominion over the territory annexed, the territory becomes incorporated within the city and a corporation de facto is created and 'none but the State can call its existence in question.' (*Tulare Irr. Dist.* v. *Shepard,* 185 U.S. 1 [22 S.Ct. 531, 536, 46 L.Ed. 773].)''

In order to establish the exercise of de facto jurisdiction, certain requisites are fundamental. As set forth in 1 McQuillin, Municipal Corporations, section 3.48, at pages 587-589: ''A de facto corporation has been defined as one so defectively created as not to be a de jure corporation, but nevertheless the result of a bona fide attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such on the ground of public policy in all proceedings except a direct attack by the state questioning its corporate existence. The law recognizes that, although a municipal corporation may not be a de jure corporation, it may exist de facto; e.g., where there is a defect in the proceedings of incorporation. The doctrine of de facto corporations, as applied to private corporations, applies generally to municipal corporations.

''The general rule is that, in order to be a de facto municipal corporation there must be (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempted compliance in good faith with the requirements of the statute as to incorporation; (3) a colorable compliance with the statutory requirements; and (4) an assumption of corporate powers. The proposition is also supported that an organization assuming to be a corporation de jure but for sufficient reasons not so in fact may be a corporation de facto when it is of such a character that it could, under existing laws, have full and complete corporate being and power. If the attempted incorporation is wholly void on the face of the record, there is no de facto corporation. If there was a material omission or fatal irregularity in the proceeding for the incorporation of a mu-

nicipal corporation, a purported decree of incorporation is void and does not create a de facto corporation.''

Here we find that there is no evidence of any attempt to comply in good faith with the requirements of the statute as to incorporation, nor any colorable compliance with the statutory requirements, and as McQuillin states, if the attempted incorporation is wholly void on the face of the record, there is no de facto corporation.

Here, it does appear on the face of the ordinance that it was introduced on June 5th and adopted on June 10th.

In *Pearson Drainage Dist.* v. *Erhardt,* 239 Mo.App. 845 [201 S.W.2d 484, 489-490], the court held that ''the district did not become a corporation de jure, nor, if its attempted incorporation was 'utterly void' on the face of the record, did it even acquire a de facto existence,'' and that under the decision of *State* ex rel. *Arthur* v. *Hammett,* 235 Mo.App. 927 [151 S.W.2d 695], it did not become a legal entity in any sense, and thus the district lacked legal capacity to exist and function as a corporation de facto.

Respondent calls attention to the fact that leave had been obtained from the Attorney General to file an action in quo warranto but that the Attorney General had taken no further action on the matter, awaiting the outcome of the present appeal.

In view of the foregoing, the judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 9, 1964.