MRS. FRED J. GRAY, APPELLANT, v. SCHOOL DISTRICT No. 73, CLAY COUNTY, MISSOURI ET AL., RESPONDENTS.

Kansas City Court of Appeals. May 5, 1930.

*Wm. Bush* and *James S. Summers* for appellant.

*Lawson & Hale* for respondents.

BLAND, J.—This is an action by plaintiff for compensation due her for services as a high school teacher, employed as such by Consolidated School District No. 1 of Clay county. The petition contains two counts, the first one being a contract entered into between plaintiff and the consolidated district covering the school term of 1923-24, and the second count being on a contract covering the school term commencing in September, 1924. The first count of the petition prays for the sum of $1018.85 and interest and the second for $145.41 plus interest. The answers of the defendants consist of general denials. The cause was submitted to the court upon an agreed statement of facts. No finding of facts or declaration of law was requested or given. The trial resulted in a general finding for the defendants. The case was appealed to the Supreme Court upon the theory that a constitutional question was involved, but that court found to the contrary and transferred the cause here.

The facts show that plaintiff taught school in the consolidated district for the nine months school year 1923-24, and for the month of September, 1924, pending litigation involving the dissolution of said school district. The district was organized in 1913 and it appears that from and after its organization the taxpayers thereof

have been involved in unfortunate controversies among themselves. Shortly after its formation the prosecuting attorney of Clay county instigated a proceeding attacking the validity of its organization. [See State ex inf. v. Clardy, 267 Mo. 371.]

On May 3, 1923, an election was held to determine whether the district should be dissolved. Following such election the persons in charge of it announced that two-thirds of the taxpayers and qualified voters of the district had voted thereat for dissolution, but the result of said election was openly contested by some of the taxpayers and residents of the district opposed to such dissolution. Thereafter, on September 10, 1923, the Attorney-General instituted in the Supreme Court a proceeding in *quo warranto* for the purpose of securing a judicial determination of whether the Consolidated School District had in fact been dissolved. [State ex inf. Barrett v. Clements, 305 Mo. 297.] The decision of that court, rendered on September 18, 1924, was that the district had been dissolved at the election held on May 3, 1923. During the *interim*, that is, from May 3, 1923, to September 18, 1924, the consolidated district continued to function. It continued after September 10, 1923, with the aid of a restraining order from the Supreme Court issued at the commencement of the *quo warranto* proceeding last mentioned. This injunctive process was very general in its terms and evidently was for the purpose of maintaining the *status quo* as of the date of, or anterior to, the election of May 3, 1923, until the determination of the litigation.

The board of directors, and a number of taxpayers, in good faith believed that the requisite two-thirds majority of the qualified voters had not voted at the election held on May 3, 1923, to dissolve the district so the directors, believing that the district had not been dissolved continued after the election to conduct the affairs of the consolidated district, including the schools therein. They employed teachers and made other suitable provisions for schools.

The common school districts included in the consolidated district prior to May 3, 1923, were Faubian, Big Shoal, Englewood, Linden and Fairview. After May 3, 1923, there opposed to the consolidated district organized common school districts in the Faubian, Big Shoal and Englewood districts but none was organized in the Linden and Fairview districts. The consolidated district without opposition opened and conducted common schools in these two districts and, without opposition, a high school in the building located in the Linden district. The common school districts so organized took possession of the school buildings in their districts and undertook to open common schools therein and certified the tax levies voted by them. Thereupon the directors of the consolidated district took action resulting in the institution of the *quo warranto* proceedings in

the Supreme Court last above referred to, seeking to oust the common school districts from interfering with the functioning of the Consolidated School District.

On April 15, 1923, prior to voting on the dissolution of the Consolidated School District, the voters, by a majority vote, provided for a tax levy of 65 cents on the one hundred dollars valuation for school purposes. However, the result of this vote and the rate of taxation voted was not certified by the clerk of the school board to the County Superintendent or to the clerk of the county court until May 11, 1923, and the county clerk refused to assess and carry out the amount so returned on the tax books. Upon the organization of the three common school districts in question one of them voted to levy 40 cents and the other two in excess of 40 cents. On the certification of these rates to the county clerk he proceeded to assess and carry out the amount so returned on the tax books against the property in the respective school districts. Treating the territory within the Linden and Fairview districts as unorganized territory, the county clerk assessed on the tax books a levy for school purposes of 40 cents on the one hundred dollars valuation on property in this territory.

Again in the spring of 1924, the Consolidated School District provided for a rate of taxation which was certified to the County Superintendent of Schools and to the county clerk, but the latter refused to make any assessment on the tax books. Consequently, the consolidated district has had no funds with which to pay teachers or other expenses incident to the operation of the schools in the consolidated district.

The restraining order issued by the Supreme Court in the fall of 1923, was not obeyed by the directors of the three common school districts above mentioned and after the service of the order upon them they refused to abandon the school houses in their districts and to cease having school taught therein. However, the Supreme Court cited them for contempt and in September, 1923, they abandoned the school property which was then taken over by the directors of the consolidated districts. Thereafter school was taught by the consolidated district in those buildings until September 18, 1924, when the Supreme Court declared the consolidated district to have been disorganized on May 3, 1923. From the time of this decision of the Supreme Court the directors of the consolidated district have ceased to attempt to perform any functions of the school district. After the decision of the Supreme Court the territory in the Linden and Fairview districts was organized into common school districts.

After the school buildings in the Faubian, Englewood and Big Shoal districts were surrendered to the directors of the consolidated district two of said common school districts conducted schools else-

where in their districts. The board of directors of the Consolidated School District continued in good faith to function as such. They conducted the affairs of the Consolidated School District, held annual meetings, voted taxes, employed teachers, conducted schools, etc. as though it were in fact a *de jure* school district, until the decision of the Supreme Court made on September 18, 1924, aforesaid.

Of course, the Consolidated School District had no money to pay school teachers and to meet other expenses but the plaintiff remained at her post teaching school in the high school located in the Linden district. The agreed statement of facts recites that no child within the Faubian or Big Shoal district attended the high school, located in the Linden school district, taught by plaintiff, the inference being that the children from the other territory within the Consolidated School District did attend high school therein. It is admitted that if plaintiff is entitled to recover in this action at all that she is entitled to recover what she sues for.

It is the contention of plaintiff that during the period transpiring between May 3, 1923 (the date of the dissolution of the consolidated district) and the decision of the Supreme Court, handed down on September 18, 1924, the consolidated district was a *de facto* municipal corporation and that, consequently, the contracts entered into by it during that time were valid and binding; that the defendants, school districts, having taken over the property, franchises and functions of the consolidated district are, by operation of law, bound by all its obligations. including the one sued upon. It is insisted by the defendants that the Consolidated School District having been dissolved on May 3, 1923, there could not have been a *de facto* corporation in existence after that time.

Section 11242, Revised Statutes 1919, provides for the disorganization of certain school districts, including consolidated districts. Said section provides that after the vote of dissolution the district *"shall be dissolved* and the same territory included in said school districts may be organized into a common school district under article 3 of this chapter.''

Of course, if the consolidated district was a *de facto* corporation it cannot be attacked by defendants or anyone else save by the State in a direct proceeding (14 C. J., p. 204). A *de facto* corporation usually comes into existence as a corporate body because of the failure to comply with some provision of the law in its organization (14 C. J., p. 204).

''The general rule is that there is a *de facto* corporation, so that the legality of its corporate existence cannot be attacked collaterally, where (1) there is a special act or general law under which such a corporation may lawfully exist, (2) a bona-fide attempt to organize under the law and colorable compliance with the statutory require-

ments, and (3) actual user or exercise of corporate powers in pursuance of such law and attempted organization." [14 C. J., p. 214.]

It has been held where the Legislature limits the life of a corporation to a specified number of years that after the expiration of that time it has no existence for any purpose, either *de jure* or *de facto*. [Park Co. v. Gibson, 268 Mo. 394, 406; Bradley v. Reppell, 133 Mo. 545.] In view of the fact that section 11242, provides that when a school district is disorganized the "district shall be dissolved," the consolidated district, on May 3, 1923, when the voters voted to disorganize, it would seem came to an end for all purposes, unless the action of the Supreme Court in issuing its restraining order to maintain the *status quo* until the proceedings before it could be determined on its merits, would work a continuance of the district, at least as a *de facto* corporation.

No contention is made by the defendants that the restraining order issued by the Supreme Court is not a valid one. It undoubtedly was the purpose of the court in issuing the process to permit schools to be conducted within the territory comprising the Consolidated School District without being hampered by rival organizations claiming to have authority to perform that function. The education of youth is one of the highest duties imposed upon the State and the Supreme Court evidently recognized that the public interest required that some organization be given full authority to perform the functions of schools within the territory of the Consolidated School District during the pendency of the action that had been instituted before that court. In the case of Com'rs of Wash. Co. v. Wash. Co. School Com'rs, 26 Atl. 115, 116 (Md.), the court said:

"It could never be tolerated that the course of public education should be arrested while a contest was waged to determine what individuals should administer the system. It is on considerations of this kind that the law recognizes a *de facto* officer, and not from any regard to his personal interests. The public business must be transacted, and therefore his official acts, performed in doing what the law requires to be done, must be sustained as valid. There is no alternative between this course and the stoppage of the public business, and this latter result is, of course out of the question. If the *de facto* officer is to discharge the duties of his office, he must have a right to use the means which the law has provided for the purpose; and it would be in vain to give him the right to the means, if the courts should refuse him their aid in obtaining them. Upon these grounds we think that the courts ought to aid the old board in obtaining the money which has been set apart for the maintenance of the public schools; that is to say, as long as the old board is in actual and visible possession of the public trust once confided in it, but no

longer. It will be perceived that we are speaking exclusively of such matters as effect the public interest, and have no reference whatever to such acts of a *de facto* officer as concern his own personal interests."

The remedy by injunction is recognized as being the proper proceeding by an incumbent officer to protect his possession against the interference of an adverse claimant whose title is in dispute, until the latter shall have established title at law. [Reemelin v. Mosby, 47 Ohio State, 570; Jackson v. Powell, 119 La. 882; Blain v. Chippewa Circuit Judge, 145 Mich. 59; School District v. Weise, 77 Minn. 167; Kerr v. Trego, 47 Pa. St. 292; State ex rel. Fairbanks v. Superior Court, 17 Wash. 12.] Of course, during the pendency of such a proceeding the incumbent is a *de facto* officer. [State v. Douglas, 50 Mo. 593, 596; County of Ralls v. Doubles, 105 U. S. 728, 730; State ex rel. v. Orr, 190 N. W. 12; 29 Cyc., p. 1416.]

By reason of the restraining order issued by the Supreme Court there was no organization within the territory of the Consolidated School District that could function as a school district, except the Consolidated School District, and unless that organization could function as at least a *de facto* corporation, great public injury would necessarily result. [Redmond v. Hay & Grain Co., 209 Mo. App. 682; State ex rel. v. Sutton, 3 Mo. App. 388; Simpson v. McGonegal, 52 Mo. App. 540.] We are therefore of the opinion that between the time of the dissolution of the Consolidated School District and the final decision of the Supreme Court in the *quo warranto* proceeding referred to, which had the effect of dissolving the injunctive process, the Consolidated School District was a *de facto* corporation. Being such it had the same power in reference to raising taxes, employing teachers and conducting schools within the district as a *de jure* corporation. [Miller v. Perris Irr. Dist., 99 Fed. 143; 14 C. J., p. 208.]

The defendants, having succeeded in all of the rights and immunities previously enjoyed by the Consolidated School District, including its property, is answerable for all of its liabilities. [Thompson v. Abbott, 61 Mo. 176; Kans v. Bank, 79 Mo. 182; Barrie v. Ry., 138 Mo. App. 557, 650, 651; Shapleigh v. San Angelo, 167 U. S. 646; Wilson v. Drain. Dist., 257 Mo. 266; Wilson v. Drain. Dist., 176 Mo. App. 470.] Defendants' school districts were organized not only from the territory in the consolidated district but with some unorganized adjacent school territory never in the consolidated district. However, this circumstance does not exonerate defendants from liability for the obligations of the consolidated district properly entered into. [See Wilson v. Drain. Dist., supra, l. c. 286.] An examination of the plat contained in the abstract shows that very little of the territory now in the defendants' districts was not originally in the consolidated district.

It is insisted by the defendants that as section 11, article 10 of the Constitution restricts school districts to a tax rate of 40 cents on the one hundred dollars valuation, unless an increase be duly authorized by a vote of the district in which event as much as 65 cents on the one hundred dollars assessed valuation might be levied, and as the tax authorities of Clay county levied and collected 40 cents on the one hundred dollars assessed valuation on all of the territory in the consolidated district not theretofore organized into the three common school districts, and as one of these common school district authorities levied a tax in the sum of 40 cents and the other two in excess of that sum, there was no authority left in the consolidated district to make a levy; that the amount that might be raised has been exhausted. Defendants further say:

"It is true that a legally existing district, by a proper vote of the taxpayers therein, could have increased the levy from forty cents on the one hundred dollars assessed valuation to 65 cents on the one hundred dollars assessed valuation, but in the instant case there was no such authority from the taxpayers. The action of the annual school meeting in April, 1923, became absolutely void with the dissolution of the district. The taxing authorities of the county were not only under no duty to make the levy theretofore voted at the annual meeting in the consolidated district, but they had no right to do so."

Defendants also refer us to section 12, article 10 of the Constitution which prohibits school districts or other subdivisions of the State to become indebted for any purpose to any amount exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the voters thereof. In this connection defendants say:

"That no revenue was provided for the payment of appellant under her contracts, is admitted and that sufficient revenue could not possibly have been provided even by vote of the consolidated district, is apparent."

We do not understand that it is defendants' contention that the levies made by the Consolidated School District were not sufficient to pay the expense of that district, but that such levies were void. Of course, from what we have said there is no merit in this contention. The district was a *de facto* corporation having the power to conduct schools and also having authority to raise the revenue provided therefor in the usual way, that is, it had the powers in the premises of a *de jure* school district. We construe defendants' contention to be that, as the common school districts had made the levies for their districts and the taxing authorities had made a levy for the unorganized territory, even though the consolidated district be a *de facto* corporation it had no authority to make an additional

levy. In this connection defendants say, in effect, that the common school districts and the taxing authorities had already performed that function for the purpose of carrying on the schools established by the *de jure* authorities and other than that of the consolidated district. There could not have been two corporations existing in the same sphere with the same powers, either the Consolidated School District had the authority to make the levy and receive the taxes or the common school organizations had that authority. After the issuance of the restraining order by the Supreme Court all activity on the part of the common school organizations and county officers, in pursuance to the authority granted them by the action of such districts, should have ceased. It is quite apparent that the levies made by the Consolidated School District are the only ones that can be legally recognized.

The judgment is reversed and the cause remanded with directions to the trial court to render judgment in favor of the plaintiff as prayed for in her petition. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.