A. W. MENDENHALL COMPANY, APPELLANT, v. C. C. BOOHER, JR., RESPONDENT.—48 S. W. (2d) 120.

Kansas City Court of Appeals.   February 1, 1932.

*L. C. Harper, Newbill & Brannock* and *Davis & Davis* for appellant.

*Omar E. Robinson* and *Kenneth W. Tapp* for respondent.

946

ARNOLD, J.—This is an action on account for merchandise sold. The suit was instituted in the court of a justice of the peace of Kaw Township, Jackson County, Missouri, on October 7, 1929.

The defendants entered appearance and waived issuance of summons. There was a judgment for plaintiffs in the justice court and an appeal was taken to the circuit court where the case was consolidated with four similar cases and tried *de novo,* upon an agreed statement of facts. A jury was waived and trial was to the court, resulting in judgment for the defendants. Motion for new trial was overruled and plaintiffs have appealed.

While the record discloses that the instant case, with four other similar cases, was filed in the justice court, where judgments were for plaintiffs, and on appeal to the circuit court, judgment in each case was for defendants. In each case there was a different plaintiff but the defendants were the same, and judgment in each was the same. The only case briefed here is that of Mendenhall Company v. C. C. Booher, Jr. et al., and our ruling in this case carries with it a determination of the companion cases.

The agreed statement of facts is rather long and it is unnecessary to set it out *in haec verba,* but for purposes of this appeal, the purport thereof may be stated as follows:

On or about May 20, 1928, defendants associated themselves together for the purpose of organizing a *pro forma* corporation to be known as the Triangle Drug Club, and presented to the circuit court of Jackson county, Missouri, a petition and articles of agreement therefor, stating that no other articles or agreement existed; that the decree was pronounced proper and according to law by *amicus curiae* appointed by the court; that a certified copy of the court's order granting the decree was attached by the clerk to the articles of agreement; that defendants failed and neglected to record said articles of agreement in the office of the recorder of deeds of Jackson county, Missouri, at that time, but thereafter on July 12, 1929, the same were duly filed for record; that defendants wholly failed and neglected to file the articles of association in the office of the secretary of state at that time, but on July 15th, did file them; that defendants, under the name of the Triangle Drug Club, issued no stock certificates, nor offered for sale or distribution among themselves any stock, bonds, shares, certificates, debentures or notes, or securities offered for sale or sold by the Triangle Drug Club, to anyone else; that plaintiffs contracted with the Triangle Drug Club, understanding the same to be a corporation, at the time of such sale and delivery of merchandise on account of which this suit is brought; that all of the foregoing constitutes the agreed stipulation of facts on which these cases were tried before the justice of the peace. It is

further agreed that following the issuance of the *pro forma* decree, the Triangle Drug Club engaged in business as specified in the articles of agreement, having as its place of business a store room located at 1207 Brooklyn avenue; that the same was its only place of business and on the front window of said room was the sign and name—Triangle Drug Club; that Charles P. Dixon who was named in the articles as one of the incorporators and also secretary, remained at the place of business in charge and control thereof; that said Dixon ordered, in the name of the Triangle Drug Club, Inc., the merchandise here in issue, and for the price of which these suits are instituted; that said merchandise was delivered to, and in the name of, the Triangle Drug Club, Inc., and none of plaintiffs had knowledge of restrictions, if any, on the power and authority of said Dixon; that the prices charged for the merchandise in the amounts sued upon are just, true and unquestioned, and that said amounts are due and unpaid; that neither the individual defendants nor any of them had specific knowledge of the orders involved in these suits and did not actually receive any of the merchandise ordered; that defendants had requested said Dixon not to place any orders for merchandise without their consent; that said restrictions were not conveyed to plaintiffs and plaintiffs had no knowledge thereof.

It is stipulated that plaintiffs objected to the materiality of any directions given by defendants or any of them to said Dixon; that while the sale and delivery of said merchandise was made to said Triangle Drug Club, Inc., it was not at that time a completely incorporated company; that at the time the merchandise was sold, there had been nothing filed in the office of the secretary of state nor with the recorder of deeds of Jackson county, Missouri, in connection with the incorporation of the company, but at the time, the *pro forma* decree had been entered; that the merchandise, for the price of which these suits were brought, was such as is ordinarily handled in the retail drug business; that each of the defendants were, at the time of said sale and delivery, engaged in the retail drug business; and that under the articles of agreement on which the *pro forma* decree was rendered, one of the avowed purposes of the club was to engage in the cooperative buying of such merchandise. Article 1, of the articles of agreement, is as follows:

"Know all men by these presents: That the undersigned, with a view of becoming a body corporate and politic under Article 2 of Chapter 90, of the Revised Statutes of Missouri, 1919, do hereby associate ourselves, our successors, and those who may join us, together under the name of Triangle Drug Club for the purpose of owning or leasing, establishing and maintaining a proper headquarters and necessary, suitable and convenient quarters for the

purpose of maintaining a place of common and friendly intercourse for the promotion of the moral, mental and fraternal welfare of the retail druggists of this territory and for advancing by rational amusements and community gatherings the moral and mental welfare of ourselves, or members, our neighbors, and our associates and for the purpose of analyzing the problems and laws affecting the retail druggists of this territory, and for the purpose of making investigations into the conditions of the general drug trade and for the purpose of engaging in cooperative buying for the members of the Triangle Drug Club.''

There is but one assignment of error, to-wit, the court erred in failing to find defendants individually liable on the agreed statement of facts, and in failing to find that the Triangle Drug Club was neither a *de jure* or *de facto* corporation, and that the incomplete organization and course of dealing, as disclosed by the agreed statement of facts, gave no protection to defendants from individual liability.

Sections 4538 and 4997, Revised Statutes 1929, define the procedure for the incorporation of companies. Section 4538 reads, in part:

''The corporate existence of such corporation shall date from the time of filing its articles of association with the secretary of state, but before such corporation shall commence business and before any corporate act shall be legal the certified copy of the certificate and articles shall be filed with the recorder of deeds as herein provided. The certificate so issued by the secretary of state shall be taken by the courts of this State as evidence of the corporate existence of such corporation.''

The agreed statement of facts shows that at the time of the purchase of the merchandise in question, the incorporators had not filed the articles of agreement with the secretary of state, nor for record with the recorder of deeds; nor had the secretary of state issued his certificate of incorporation. The only thing that had been accomplished in the proceedings for incorporation was the issuance of a *pro forma* decree. It is plaintiffs' position that at the time, there was no corporation in existence, either *de facto* or *de jure,* and therefore the individual incorporators are liable, as such, for the purchase price of the goods bought by one of the incorporators in the name of the incompleted corporation.

It is the contention of defendants that even though the incorporation was incomplete, a *de facto* corporation was created, and its existence cannot be collaterally attacked in this action; that defendants cannot be held for the unauthorized purchase of the merchandise.

There is much conflict in the reported cases as to just what constitutes a corporation *de facto,* as distinguished from an association which pretends to be a corporation but which has no existence at all, as such, either *de facto* or *de jure.* Individuals cannot acquire a corporate existence, either *de jure* or *de facto,* by merely adopting a name importing a corporation and assuming to act as a corporation without any color of lawful authority; mere user alone is not sufficient. 14 C. J. 214, 215, in addition to the above outline, states:

"Although there is some conflict in the decisions, as will hereafter be seen, the general rule is that there is a *de facto* corporation, so that the legality of its corporate existence cannot be attacked collaterally, where (1) there is a special act or general law under which such a corporation may lawfully exist, (2) a bona fide attempt to organize under the law and colorable compliances with the statutory requirements, and (3) actual user or exercise of corporate powers in pursuance of such law and attempted organization; and, on the other hand, according to the great weight of authority, that there is no corporation, either *de jure* or *de facto,* unless all of these elements exist."

While the above states the general rule, the appellate courts in our State have held that the certificate of incorporation issued by the secretary of state to a corporation is a final determination of its right to do business, and thereafter no one except the State can question its corporate existence. [Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 S. W. 74; First National Bank v. Rockefeller, 195 Mo. 15, 93 S. W. 761; Meramec Spring Park Co. v. Gibson, 188 S. W. 179, 180; Klix v. Parish, 137 Mo. App. 347, 118 S. W. 1171; Church v. Tobbein, 82 Mo. 418.]

The agreed statement of facts discloses that the Triangle Drug Club made no attempt, as a corporation, to do business. In the case of Wheeler & Motter Mercantile Company v. Lamberton, 8 Fed. (2d) 957, 960, 44 A. L. R. 769, 774, the court said:

"In the absence of statutes to the contrary, the signer of articles of incorporation thereby gives no authority to his co-signers, and does not constitute them, or any of them, his agent or agents, prior to the conclusion of the incorporation, to purchase for the proposed corporation, for him or them, or to make him or them liable for goods, merchandise or other property requisite or convenient for the expected business of the proposed corporation. The rule of *caveat emptor* governs vendors under such circumstances."

Applying these rules to the situation disclosed by the agreed statement of facts, liability cannot attach to defendants individually, unless, in addition to being co-signers of the articles of agreement, they either made or ratified the contract of purchase from plaintiffs. It

is not contended defendants made the contracts nor ratified the purchases. Under the agreed statement of facts, it is gleaned the purchases were made by Dixon, contrary to instructions and without defendants' knowledge. It is true that plaintiffs may not have known of these restrictions, but under the rule of *caveat emptor*, it was their duty to make inquiry. To this effect are the following cases: 'Railroad Gazette v. Wherry, 58 Mo. App. 423, 426; Farmers State Bank v. Kuchs, 163 Mo. App. 606, 612, 613. In the last mentioned case, it is said:

"But the mere facts that an abortive attempt to incorporate was made and that one of the incorporators without authority express or implied, assumed the right to act as the agent of the corporation, and as such agent, contracted debts in the name of the corporation, of themselves are not sufficient to impose a liability for the payment of such debts upon the innocent projectors."

Liability of the kind sought to be enforced by plaintiffs herein must be supported by some element of estoppel, i. e., the burden was on plaintiffs to show that defendants, by act or word, gave Dixon either express or implied authority to take control in the name of the proposed corporation and to make contracts in its name.

There is no such evidence here. The agreed statement of facts may be construed to the effect that Dixon acted entirely on his. own initiative, without any authority from defendants. It is true defendants signed and acknowledged the articles of association, and that is one step, but only one, in the creation of a corporate entity. It is admitted in the agreed statement of facts there was no authority given to Dixon, and none can be implied, simply because Dixon was in charge of the place of business. Thus, it is clear that defendants cannot be held individually liable under the agreed facts and the law applicable thereto.

We have examined the cases cited by plaintiffs in support of their contention that no *de facto* corporation existed and find them distinguishable from the one at bar. In the case of Queen City Fur. Co., 127 Mo. 356, the individuals intended forming a corporation called the "Baldwin Theatre." They previously selected certain furnishings and merchandise. The organization of the incorporation was abandoned and a new corporation was formed a year or so later. It was held the obligation for the purchases was in the individuals who personally selected and purchased the articles. But that is not this case. In the cases of Ellis v. Brand, 176 Mo. App. 383, 158 S. W. 705, and Sexton v. Snyder, 119 Mo. App. 668, 94 S. W. 562, the same situation existed and the same rule was applied. In the Ellis case no steps were taken to incorporate, and the action was based on

an original partnership agreement. It was there held that it did not appear the parties did business and incurred obligations under the name of the intended corporation.

Under the agreed statement of facts and the law applicable thereto, we must hold there was no error in the ruling of the trial court in the premises. The judgment is affirmed.