PEARSON DRAINAGE DISTRICT, A CORPORATION, APPELLANT, v. JOHN ERHARDT, REVIVED IN THE NAME OF TOM DEVINE, RESPONDENT.—201 S. W. (2d) 484.

St. Louis Court of Appeals. Opinion filed April 15, 1947.

846

*Stinson, Mag, Thomson, McEvers & Fizzell* and *Clifford B. Kimberly; Milligan, Kimberly & Deacy* for appellant.

848

*Windsor & Wooldridge and Clark, Boggs, Peterson & Becker* for respondent.

BENNICK, C.—This is an action in three counts which was brought by Pearson Drainage District in its corporate name to recover delinquent taxes aggregating $833.62 which had been assessed for the years 1933, 1934, and 1935 against a certain tract of land within the district owned by one John Erhardt. Judgment was also prayed for the statutory penalty, costs of suit, and a reasonable attorneys' fee to be fixed by the court. Pending the action Erhardt conveyed the land to one Tom Devine, who was thereupon substituted as the party defendant.

Originating in the Circuit Court of Howard County, the case was sent on change of venue to the Circuit Court of Audrian County, wherein, by a pre-trial agreement, the case was submitted upon the single issue of *res adjudicata* as to the question of plaintiff's corporate entity, with the understanding that if the plea was sustained, final judgment should thereupon be entered against plaintiff.

The court found, upon the evidence adduced, that the plea of *res adjudicata* was well taken, and that it had theretofore been adjudicated, in cases binding upon both parties, that plaintiff was neither a corporation *de jure* nor *de facto* with capacity to maintain this action. The court also found that the evidence did not support plaintiff's contention that defendant was estopped to deny plaintiff's corporate existence. Judgment was accordingly entered that plaintiff have and take nothing on its petition, and that defendant go hence without day and have and recover all costs from certain named individuals, who, at the time of the institution of the action, were acting as plaintiff's board of directors.

Following the entry of such judgment, plaintiff filed its motion for a new trial; and this being overruled, plaintiff gave notice of appeal to the Supreme Court, which was thought to have appellate jurisdiction upon the grounds that the case required the construction of the revenue laws of the state, and that title to real estate was involved. The Supreme Court found, however, that it was without jurisdiction, and consequently ordered that the case be transferred here. [Pearson Drainage Dist. v. Erhardt (Mo.), 196 S. W. (2d) 855.]

On March 28, 1928, certain landowners in Howard County filed in the circuit court of that county their articles of association and petition praying the court that the lands described therein be declared a drainage district under the provisions of Sections 12324 *et seq.*, Revised Statutes of Missouri, 1939, Missouri Revised Statutes Annotated, sections 12324 *et seq.*

The court, on June 1, 1928, entered on its docket a notation that the application was heard and granted and a decree rendered creating the district to be known as Pearson Drainage District. A similar notation was made in the clerk's minute book for that day. However the decree itself, for one reason or another, was not duly entered of record; and the failure of the court in such respect has figured in all the subsequent controversy over the question of the validity of the district's corporate existence.

On October 18, 1937, more than nine years after the decision of the court that the application be granted and a decree be entered creating the district as a public corporation of this state, the district, in its own corporate name, filed a petition in the circuit court for the entry of a decree *nunc pro tunc* in accordance with the finding of the court on June 1, 1928. It is significant that this *nunc pro tunc* proceeding was not a collateral matter arising after incorporation, but instead was brought by the district itself in the very proceeding for its incorporation. A number of landowners, including Tom Devine, contested the right of the district to have the entry of a *nunc pro tunc* decree; and when the court indicated its intention to sustain the district's petition, a writ of prohibition was sought in the Kansas City Court of Appeals at the instance of two of the landowners,

Harriett W. Arthur and John E. Stapleton, who were selected as relators in the prohibition case for the reason that they had been given no notice of the *nunc pro tunc* proceeding.

The Kansas City Court of Appeals ordered the writ to issue directed to Hon. Aubrey R. Hammett, the judge of the circuit court; and after a hearing a decision was rendered making the preliminary rule in prohibition absolute. [State ex rel. v. Hammett, 235 Mo. App. 927, 151 S. W. (2d) 695.]

The Court of Appeals pointed out that in a proceeding for the incorporation of a drainage district, the articles of association and petition must comply substantially, if not strictly, with the provisions of law relating to the organization of drainage districts by circuit courts; that in the absence of statutory authority, the circuit court, though a court of general jurisdiction, is without jurisdiction to incorporate a drainage district; that the record before the circuit court when the judgment of June 1, 1928, was rendered failed to show the boundary lines of the proposed district, and was so defective in its recitals that an expert engineer could not locate the land which was to be included in the proposed district without arbitrarily changing the description contained in the original petition; and that the judgment incorporating the district was in violation of Section 12324, which requires the articles of incorporation to state "the boundary lines of the proposed drainage district", and for that reason was utterly void.

In other words, the Court of Appeals expressly held that the allegations of the petition for incorporation did not entitle the petitioners to a decree incorporating the district; that it was lack of jurisdiction over the subject matter that voided the judgment of June 1, 1928; and that inasmuch as there never was a valid judgment creating the drainage district—the judgment of June 1, 1928, being "utterly void"—there was nothing upon which to base a judgment *nunc pro tunc.*

At the time of the decision in the Hammett case, there was pending an action instituted by the district against one Rush Boggs, the owner of a tract of land within the district. This action was of the same character as the one at bar, being a suit for delinquent taxes for the year 1932.

It is to be noted that according to defendant's evidence, the Boggs case, just as had been true in the Hammett case, was defended, not by Boggs alone, but by a group of protesting landowners, including Tom Devine, who had openly joined themselves together for the purpose of disputing the authority of the district whenever and however it might be asserted.

The petition in the Boggs case alleged that the district was legally organized and incorporated under the statutes relating to the organization of drainage districts by circuit courts, and that it had been

duly incorporated by the Circuit Court of Howard County on June 1, 1928.

The case was transferred on change of venue to the Circuit Court of Monroe County; and following the decision of the Kansas City Court of Appeals in the Hammett case on May 5, 1941, a plea in abatement and answer was filed, denying that the district was a corporate entity entitled to maintain the action, and setting up the decision in the Hammett case as conclusive upon the issue. The district filed a motion to strike out such plea; and after a hearing the court overruled the motion to strike, sustained the plea in abatement, and entered final judgment against the district and in favor of defendant Boggs. The district thereupon took an appeal to this court, wherein, on May 6, 1943, an order was entered dismissing the appeal because of the district's failure to comply with the rules.

While the present action was instituted in 1935, it apparently was allowed to *lie dormant* until July 31, 1943, when an amended petition was filed alleging, as in the Boggs case, that the district was duly and legally organized and incorporated under the statutes relating to the organization of drainage districts by circuit courts, and that it had been duly incorporated by the Circuit Court of Howard County on June 1, 1928. Then followed lengthy allegations purporting to show a *bona fide* attempt to organize under the law and a colorable compliance with statutory requirements, followed by an actual user and exercise of such corporate powers as a duly organized drainage district would lawfully possess.

In other words, according to the district's construction of its petition, it not only alleged that the district was a corporation *de jure*, but also set up facts which would constitute it a corporation *de facto*, if not a corporation *de jure*. Subsequently, by a further amendment to the petition, it was charged that both Devine and his predecessor, Erhardt, had so participated in the attempted organization of the district, and its attempted functioning as such, that defendant was now estopped to deny its existence as a corporate entity empowered to levy the taxes involved in this proceeding and to maintain this action for their collection.

In his answer defendant alleged, along with other things, that the district was not a corporation or legal entity entitled to maintain this action, and that the decisions in the Hammett and Boggs cases were *res adjudicata* upon such issue and conclusive upon the district. He further alleged that both he and Erhardt, his predecessor in title, had at all times denied the jurisdiction of the Circuit Court of Howard County to incorporate a drainage district upon the petition filed, and had since denied the corporate existence of the district and its right to function as such.

We have already indicated that by pre-trial agreement, the only matter submitted was the issue of *res adjudicata,* with the under-

standing between the parties that if such defense was sustained, final judgment should be entered against the district; and that upon a consideration of such matter, the court did sustain such defense, ruled against the district on its plea of estoppel, and rendered final judgment in defendant's favor.

The burden of the district's argument in opposition to the court's decision is that the judgments in the Hammett and Boggs cases could not be held *res adjudicata* in this proceeding because of lack of identity of both parties and issues. Of the two tests which are thus brought into controversy, the question of identity of issues is of initial importance. This for the reason that unless the Hammett and Boggs cases did adjudicate the fact that the district was not a legal entity with capacity to maintain the present proceeding, it would be of no consequence whether the interests of the participants were so interlaced throughout as to satisfy the requirement for identity of parties. Moreover in considering the question of *res adjudicata,* it is the Hammett case which is of chief concern, since the result in the Boggs case, as we have already pointed out, was itself based upon a finding that the Hammett decision had determined that the district lacked capacity to sue.

There is no question but that the Boggs case was of the identical character of the one at bar, being a suit to collect delinquent taxes assessed against land within the district. The Hammett case was concededly of a different character, being a suit in prohibition to determine whether the Circuit Court of Howard County had jurisdiction to enter a decree of incorporation *nunc pro tunc.* Nevertheless the Hammett case, as well as the Boggs case, involved the question of the legal status of the district; and the district in effect concedes that both cases decided that it lacked the status of a corporation *de jure.* It insists, however, that neither case determined its right to exercise the powers of a corporation *de facto,* and for that reason could not be conclusive in the case at bar, where the petition sets out facts allegedly showing that even if the district is not a corporation *de jure,* it in any event has a *de facto* existence. The question is therefore reduced to one of whether the effect of the prior adjudications was to conclude the district in respect to its right to maintain this action as a corporation *de facto.*

Strictly speaking, the term "corporation" implies a corporation *de jure,* which means that the corporation is in all respects legal, and that its right to exist as a corporation and to exercise corporate powers in conformity with the terms of its charter is one of which it cannot be deprived, even by the state in a direct proceeding. [18 C. J. S., Corporations, secs. 87, 93; 13 Am. Jur., Corporations, sec. 47.]

Notwithstanding some irregularity in its organization, which the state could call into question in a direct proceeding but which would not be deemed sufficient to render the same void on its face, a cor-

poration may still exist in fact, in which event it is called a corporation *de facto*. To constitute such *de facto* existence, it is only necessary that there be a general or special law under which such a corporation might lawfully exist; a *bona fide* attempt to organize under the law, and a colorable compliance with statutory requirements; and an actual user or exercise of corporate powers in pursuance of such law and attempted organization. [A. W. Mendenhall Co. v. Booher, 226 Mo. App. 945, 48 S. W. (2d) 120; Gray v. School Dist. No. 73, 224 Mo. App. 905, 28 S. W. (2d) 683; 18 C. J. S., Corporations, sec. 99; 13 Am. Jur., Corporations, sec. 49.] If all these elements are present, such a corporation has corporate existence even as against the state on collateral attack, and as against individuals and other corporations whether its right to corporate existence is attacked collaterally or directly. [School Dist. No. 35 v. Hodgin, 180 Mo. 70, 79 S. W. 148; Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 S. W. 74; 18 C. J. S., Corporations, sec. 94; 13 Am. Jur., Corporations sec. 60.]

The theory is that since the state alone has the power to incorporate, it may waive irregularities in the strict perfection of corporate existence; and so long as the state does not see fit to question the legality of the existence of a corporation, private individuals will not be permitted to raise an inquiry on their own behalf. [18 C. J. S., Corporations, sec. 94; 13 Am. Jur., Corporations, sec. 61.]

This does not mean, however, that where a corporation sues in its corporate name, the defendant may not, by specific negative averment, deny the fact of corporate existence. Such right is in fact expressly granted by the code (Laws 1943, p. 371, sec. 45, Missouri Revised Statutes Annotated, sec. 847.45); and a denial of this character does not offend against the rule which makes the legality of corporate existence immune to attack by private individuals. The denial merely requires the plaintiff to exhibit the evidence of its authority to exist and function as a corporation, but does not make it incumbent upon it to prove that its charter or other evidence of corporate existence was obtained rightfully and properly by following to the letter all the preliminary steps directed by law for its creation. [School Dist. No. 35 v. Hodgin, *supra*.]

In other words, such a defense only challenges the fact, and not the legality, of corporate existence, and is therefore not a collateral attack (18 C. J. S., Corporations, sec. 94; 19 C. J. S., Corporations, sec. 1327); and by the same token, where the case involves the validity of a decree purporting to create a public corporation, the scope of the inquiry is limited to the face of the judgment and record proper. The judgment imports verity in the first instance, but if the recitals in the judgment and record proper show the judgment to be fatally defective, the one who questions corporate existence may rely upon such fact in support of his plea, but may not resort to extraneous

evidence in order to impeach the judgment. [Inter-River Drainage Dist. of Missouri v. Henson, (Mo. App.), 99 S. W. (2d) 865.]

But while a corporation may exist *de facto* even though it might be unable to justify its existence if called upon by the state to show by what authority it assumed to act, the situation may be such that it has no existence at all, either *de jure* or *de facto*, in which event it will not be recognized as a legal entity, and its pretended corporate existence may be attacked, not only in a direct proceeding by the state, but also collaterally, either by the state or by private individuals, in any action or proceeding in which its existence is brought into question. [18 C. J. S., Corporations, sec. 87.]

There is a broad distinction between such acts as are declared to be necessary steps in the process of incorporation, and such as are required of the individuals promoting the incorporation, but which are not made prerequisites to the assumption of corporate powers. In respect to the latter, the corporation is answerable only to the state, as we have already pointed out, and then only in a direct proceeding against it. However as to the former, any material omission will be fatal to the existence of the corporation, and may be taken advantage of collaterally in any form in which the fact of incorporation is properly raised as an issue in the case. [Granby Mining and Smelting Co. v. Richards, 95 Mo. 106, 111, 8 S. W. 246; Elgin Nat. Watch Co. v. Loveland, (C. C. Ia.), 132 F. 41, 45.]

It will be recalled that in the Hammett case, the Kansas City Court of Appeals found a material omission or fatal irregularity in the proceeding for the incorporation of the district, namely, the failure of the articles of association to properly recite "the boundary lines of the proposed drainage district" as required by Section 12324. Because of such defect it was held that the Circuit Court of Howard County had lacked jurisdiction of the subject matter of the proceeding, and that its purported decree incorporating the district was "utterly void" on that account. Concededly the district did not become a corporation *de jure*, nor, if its attempted incorporation was "utterly void" on the face of the record, did it even acquire a *de facto* existence. Under the decision in the Hammett case it did not become a legal entity in any sense; and the inevitable effect of the Hammett case, as well as of the Boggs case which relied upon it, was to adjudicate that the district lacked legal capacity to exist and function as a corporation *de facto*.

This brings us then to the further question of whether the situation is such that the defendant in the present action may avail himself of the judgments in the Hammett and Boggs cases at a bar to the district's right to maintain the present action.

The burden of the district's contention is that the parties of record in the several proceedings are not identical. In the Hammett case the relators were Harriett W. Arthur and John E. Stapleton, and

the respondent was the judge of the circuit court. The purpose of that proceeding, as we have already pointed out, was to prohibit the respondent judge from entering a *nunc pro tunc* judgment incorporating the district. Devine was concededly not a party of record to the prohibition proceeding, although he had been served with notice of the district's application for the entry of a judgment *nunc pro tunc*, and had appeared by his attorney for the purpose of opposing the entry of such an order. The Boggs case, as we have also pointed out, was an action by the district for the collection of delinquent taxes assessed against land owned by one Rush Boggs. Neither was Devine a party of record to such proceeding.

It is of course true, as a general rule of *res adjudicata*, that a former judgment is only conclusive upon those who were parties to the proceeding in which the judgment was rendered, or are themselves in privity with such parties. However the application of the rule is not in all events limited to parties and privies in the strict, technical sense, but may also extend to a person who, though not a party of record to the judgment nor in privity with one who was a party, is nevertheless connected with the judgment by his personal interest in the prior litigation, as where he openly and actively participated in the litigation, and exercised management and control over it, for the assertion or protection of some interest of his own, or to avoid some ultimate liability. [Leahy v. Mercantile Trust Co., 296 Mo. 561, 247 S. W. 396; State ex rel. v. Stone, 269 Mo. 334, 190 S. W. 601; State ex rel. v. Homer, 249 Mo. 58, 155 S. W. 405; Wood v. Ensel, 63 Mo. 193; 34 C. J. 977, 1006; 30 Am. Jur., Judgments, sec. 227.]

The case at bar seems to fall squarely within the expanded application of the rule.

We do not understand that there is any dispute about the fact that a group of landowners, including Devine along with those who were parties of record in the Hammett and Boggs cases, did openly join themselves together, and make financial contributions to a common fund, for the purpose of protecting the common interests of the protesting landowners. As a matter of fact, the evidence shows that Devine was the moving spirit in the group with which he was associated, and that the district knew, in arranging for the disposition of the numerous pending cases, that the defense represented a common effort to oppose the authority of the district to levy and collect the various assessments. Each and every landowner had a common interest—the establishment of the invalidity of the district's corporate existence; and counsel appearing in behalf of the nominal parties of record represented each and every one of the group in the active control and managment of the litigation. It was not necessary, in order that Devine should be permitted to avail himself of the bar of the prior judgments, that he should have formally intervened or

have actually had himself substituted as a party of record in the prior litigation, but it suffices that he participated openly and actively with the knowledge of the district, and in aid of an interest of his own antagonistic to the claim which the district was asserting.

It was shown, as we have already pointed out, that Harriett W. Arthur and John E. Stapleton were purposely selected out of the whole group as the relators in the Hammett case; and while they were chosen for the incidental reason that they had been given no notice of the institution of the *nunc pro tunc* proceeding, the case did not ultimately turn upon that factor, but instead was decided upon the ground that the purported decree incorporating the district was "utterly void" for want of jurisdiction over the subject matter of the proceeding. Even though the respondent judge would have had the technical right to control the defense where his contemplated official act was sought to be prohibited (State ex rel. v. Rassieur, (Mo.), 184 S. W. 116), he did not elect to do so, but instead the matter of his jurisdiction to enter a decree of incorporation *nunc pro tunc* was asserted by counsel for the district. As a matter of fact, it is the universal practice in this state that in prohibition cases and the like, the attorney for the prevailing party before the judge shall represent the judge in the interest of his client (State ex rel. v. Homer, *supra*), and the procedure in the Hammett case obviously followed the usual course. It was a contest between the protesting landowners, including Devine, on the one hand, and the district on the other. Similarly the Boggs case was a contest between the district and the protesting landowners, including Devine. The adjudications in those cases were therefore conclusive upon both the district and Devine, and so far as concerns the necessity for identity of parties, are available to be pleaded by Devine as a bar to the district's right to maintain the present action.

The only remaining question is whether defendant is estopped by reason of his own acts, and particularly by reason of the acts of Erhardt, his predecessor in title, from attacking the district's existence as a legal entity with capacity to levy and collect the taxes for which it sues in this proceeding.

The basis of the district's contention in this respect is that Erhardt was one of the signers of the petition for incorporation; that he attended subsequent meetings of the landowners in the district; and that Devine, having purchased the land with knowledge that Erhardt had been one of the promoters of the district and had participated in its attempted organization, is himself subject to the legal consequences of Erhardt's recognition of the district's corporate identity.

The principle of estoppel now under consideration is entirely separate and distinct from the doctrine of *de facto* corporations. In other words, a corporation *de facto* cannot be created by estoppel, but instead the only effect of an estoppel, where the requisite facts exist,

is to prevent the question from being raised. [18 C. J. S., Corporations, sec. 108; 13 Am. Jur., Corporations, sec. 63.] Nor, where the principle of estoppel may be applied, is it necessary that the corporation actually exist *de facto* in order to estop an adversary party from questioning its corporate existence. This for the reason that if estoppel was in all events limited to *de facto* corporations, the doctrine would then be wholly unnecessary, since in such a case the same ultimate result would be reached by application of the rule which precludes a private individual from making a collateral attack upon the corporation's legal existence. [18 C. J. S., Corporations, sec. 111h.]

Defendant argues that the application of the doctrine of estoppel would be contrary to public policy under such circumstances as are present in the case at bar. His theory is that this case involves the exercise of the sovereign power of taxation, which can only be exercised in strict conformity with the terms and conditions under which the power is granted; that it would violate fundamental constitutional principles to hold that the power could be exercised by a pretended public corporation whose attempted organization was "utterly void"; and that it would be unthinkable that a situation could exist whereby one landowner would be liable for taxes because estopped to deny the district's corporate existence, while another landowner similarly situated would be exempt from taxes because of the lack of any ground for estoppel.

However all this may be, the fact is that the question of estoppel is not a separate issue in the case, but instead is embraced in the plea of *res adjudicata.*

It will be recalled that the district, in its petition, attempted to plead facts entitling it to recover upon either of three theories, the first, that it is a corporation *de jure*; the second, that it is a corporation *de facto* if not *de jure*; and the third, that defendant is in any event estopped from denying its corporate existence. For his defense, defendant set up that the district's right to maintain the action had been adjudicated against it in the Hammett and Boggs cases; and, as we have pointed out, the case was submitted to the lower court upon an agreement that the plea of *res adjudicata* be first considered, and that if it should be sustained, final judgment should then be entered in defendant's favor. In other words, the parties understood and agreed that if defendant prevailed upon his plea of *res adjudicata*, such plea would constitute a complete defense to the district's right to recover in this proceeding upon any of the theories advanced in its petition.

Not only did the parties so agree, but the important thing is that they were right in their interpretation of the issue before the court. The limited question submitted in this case was not one of determining the district's legal status or defendant's right to attack its corporate

existence. Those questions had already been adjudicated in the Hammett and Boggs cases, either specifically or necessarily; and the sole question here was whether those decisions were binding upon the parties so as to bar the district's right to maintain this action in any capacity or under any theory. We have shown that the prior adjudications are conclusive in the present case; and it consequently follows that any matter embraced within the scope of such adjudications is no longer open to further litigation.

While the case was pending in the Supreme Court, defendant filed a motion to dismiss the appeal because of the district's alleged failure to comply with the rule that the appellant's brief shall contain a fair and concise statement of the facts necessary for consideration of the questions raised on the appeal. After the case was transferred to this court, the district filed a new brief supplying any defect in its former statement. The motion to dismiss the appeal should therefore be overruled.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motion to dismiss the appeal is, accordingly, overruled, and the judgment of the circuit court affirmed. *McCullen, P. J.*, and *Anderson & Hughes, JJ.*, concur.