The STATE of Missouri, at the information of John DALTON, Attorney General of the State of Missouri, at the relation of Vern Erwin, W. M. Albin, C. H. Lewis, Sr., C. H. Lewis, Jr., J. L. Fluty, Roy Stapleton, Ethel Griffeth, and Jim Hongate, Appellants,

v.

A. B. TAYLOR, Herbert Cagle, Rufus Barnhouse, Olin Antle, and O. O. Murphy, Respondents.

No. 7464.

Springfield Court of Appeals.

Missouri.

June 11, 1956.

E. L. Monroe, A. H. Maus, Monett, for appellants.

Royle Ellis, Emory Melton, Cassville, for respondents.

McDOWELL, Presiding Judge.

Quo warranto. The amended petition in this cause, filed in the Circuit Court of Barry County, Missouri, upon the information of the Attorney General, at the relation of plaintiffs, questions the validity of the incorporation of Exeter.

The amended petition alleges that the County Court of Barry County made an order December 31, 1946, incorporating Exeter, a city of the fourth class; that defendants-respondents claimed to be and were purporting to function as Mayor and Aldermen of Exeter; that the order of the county court incorporating Exeter as a city of the fourth class is void; that the population of the territory attempted to be incorporated is not large enough to warrant such incorporation; that the population of the territory was so small as to require a vote of the people as a condition precedent to incorporation and the court was without jurisdiction to declare it a city of the fourth class; that the county court was without jurisdiction to make an order of incorporation because the petition did not set out the commons or allege that there were no commons; that the area involved was agricultural and the purported attempt to include the same into the town of Exeter was arbitrary and excessive; that the defendants are acting as Mayor and aldermen and usurping the rights under the charter and are not officers.

The prayer asks the court to decree that defendants have no rights or title to said offices; that they are illegally engaged in and usurping the powers of said offices and that they be ousted therefrom.

The answer is a general denial and an affirmative plea of estoppel and laches. It pleads that on December 6, 1946, over 100 citizens of the territory of Exeter petitioned the county court for an order incorporating the territory as a city of the fourth class; that many of the plaintiffs herein were signers of this petition and did request the court to so order and decree;

that the county court did on December 31, 1946, grant the prayer of said petitioners and incorporated Exeter as a city of the fourth class, and that the court appointed officers to act until their successors were elected and qualified; that the appointed officers qualified and that they and their successors, including these defendants, have continuously carried on the ordinary duties as officers of the city of the fourth class; that they and their successors in office have duly elected, qualified and acting officers of the city of Exeter, have passed many ordinances to regulate and govern the city, including the following: Provide for holding and regulation of elections; for the appointment of officers; for the levying and collecting of taxes for general revenue; appointment of night watchmen; providing for regulation and licensing of businesses within the city; for controlling of fireworks; defining misdemeanors, offenses against authority, against morals and decency, against public order and other miscellaneous offenses; all covering the welfare and peace of the city and providing penalties for the enforcement of such violation; providing for the appointment of police judge; providing for the regulation and licensing of beer joints within the city.

It alleged that in 1950 an ordinance was duly passed submitting to the voters of Exeter the question of issuing bonds in the sum of $35,000 for construction of a water system and to provide fire protection; that the election was held and the bond issue approved.

The answer alleges that all of the aforesaid acts by the defendants and their predecessors in office were done with the acquiescence, consent and concurrence of all of the plaintiffs, and all the adult inhabitants, taxpayers and qualified voters of Exeter and that plaintiffs, many of whom signed the petition for incorporation, by such positive and affirmative acts, and their acquiescence in the acts of these defendants and their predecessors in office for more than six years, have concurred in the rights of the

officers to act for and in behalf of the citizens of Exeter; that because of such acquiescence plaintiffs are barred by estoppel and laches from questioning the validity of the corporation or proceedings relating thereto.

It states that if the incorporation is declared void, Exeter would have no organization, administration or corporate privileges and that the public peace, security of persons and property, and the payment of the obligations of the city would all be impaired.

Under relators' first three assignments of error it is contended that the order of the county court of Barry County entered December 31, 1946, incorporating Exeter as a city of the fourth class, is void.

Three reasons are assigned, under these assignments of error, why the county court was without jurisdiction to so incorporate said city.

1. The petition for incorporation failed to set forth the commons or allege there were none which defect was jurisdictional.

2. For the reason that the statute required a vote of the inhabitants to change the corporate structure from a village to a city of the fourth class.

3. For the reason that the territory incorporated included purely agricultural land.

In In re City of Kinloch, 362 Mo. 434, 242 S.W.2d 59, 62, (2 & 3) the court stated:

"In State ex rel. and to Use of Behrens v. Crismon, 354 Mo. 174, 188 S.W.2d 937, 939, it is said, ' "The power to create or establish municipal corporations, or to enlarge or diminish their area, to reorganize their governments, or to dissolve or abolish them altogether is a political *funtion* which rests solely in the legislative branch of the government, and in the absence of constitutional restrictions, the power is practically unlimited." 37 Am.Jur., Municipal Corporation, § 7, p. 626. In that connection this court has said: "It has long been the rule in this state, and generally throughout the country, that the power of the legislature in the creation of public corporations * * * is absolute except where limited by the constitution. * * *" * * *' A municipal corporation when once incorporated can only become disincorporated by resorting to the proceedings pointed out by statute. * * *"

The legislature of Missouri has set up under the constitutional mandate classification of municipalities. Section 6215 RSMo 1939 (now Section 72.040 RSMo 1949, V.A.M.S., provides:

"All cities and towns in this state containing five hundred and less than three thousand inhabitants, and all towns existing under any special law, and having less than five hundred inhabitants, which shall elect to be cities of the fourth class, shall be cities of the fourth class."

Section 6216 RSMo 1939 (now Section 72.050 RSMo 1949, V.A.M.S.) provides:

"All towns not now incorporated in this state containing less than five hundred inhabitants, are hereby declared to be villages; provided, that any village in this state now or hereafter having more than two hundred inhabitants may by majority vote of the qualified electors therein elect to become a city of the fourth class."

In the case at bar 107 tax paying citizens within the territory sought to be incorporated, petitioned the county court of Barry County to incorporate the territory as a city of the fourth class. They accompanied the petition with a plat which gave the metes and bounds of the proposed incorporation. On December 31, 1946, the cause was heard before the county court and the court finding there were no objections to the prayer of the petition, made the following findings:

"And the court having heard the testimony and examined the petition and the plat of the proposed incorporation and all pertinent matters pertaining to such procedure finds that the petitioners constitute

a majority of the taxpaying citizens of the district proposed to be incorporated, that said district is composed of lands laid out into lots and blocks and small tracts capable of being so divided, that it has a population of less than three thousand but more than three hundred, and that it is not now incorporated nor within two and one half miles of an incorporated city or town."

■ From the face of the judgment of the county court of Barry County incorporating Exeter as a city of the fourth class, the county court was clearly without jurisdiction to order the incorporation. If the city had less than five hundred inhabitants under section 6216 (now section 72.050) of the statutes, a majority vote of the citizens of Exeter would be required to incorporate as a city of the fourth class. The statute stating that when there is less than five hundred inhabitants any village "having more than two hundred inhabitants may by majority vote of the qualified electors therein elect to become a city of the fourth class."

In In re City of Kinloch, supra, 242 S.W. 2d page 63, the Supreme Court, quoting from another opinion of that court, stated:

"* * * 'While the county court, in passing upon the petition, is performing a judicial function, and its pronouncement thereon is a judgment, yet all the agencies invoked by the statute—the majority of the taxable inhabitants, their petition, and the county court—taken collectively, is but the instrumentality through which, in the manner prescribed, the legislative power is exercised in creating cities of the fourth class.' * * * *"

■ Thus it became the duty of the county court of Barry County to determine from the petition and the evidence offered if the citizens of Exeter had complied with all of the essentials of the statute necessary for the formation of a city of the fourth class. Clearly, in this case, from the county court's order of incorporation, there had been a total failure to show a sufficient population to-wit, at least five hundred inhabi-

tants to warrant the judgment of the county court incorporating said city.

We think it is unnecessary to pass on the other two contentions that would make the incorporation void. We might state, however, that in Pearson Drainage Dist. v. Erhardt, 239 Mo.App. 845, 201 S.W.2d 484, 489, the court held where the validity of a decree of incorporation is attacked, the scope of inquiry is limited to the face of the judgment record proper. The judgment imports verity in the first instance, but if the recitals in the judgment and record proper show the judgment to be fatally defective, the one who questions the corporate existence may rely upon such facts in support of his plea, but may not resort to extraneous evidence in order to impeach the judgment. Inter-River Drainage Dist. of Missouri v. Henson, Mo.App., 99 S.W.2d 865.

The judgment incorporating Exeter did recite that the residents sought to establish a local government and control over the streets, alleys, and all commons within the bounds set out in the plat for such incorporated city, etc. In other words, the judgment of the county court, on its face, shows that the petition did set forth the commons when considered with the plat, which was made a part thereof. However, it is unnecessary, as stated before, to pass upon this question for the reason that the incorporation was void because of want of jurisdiction of the county court shown from the facts stated in its judgment.

The trial court seems to have found that the order of the county court was void but the court found that the county court did decree the incorporation on December 31, 1946, as a city of the fourth class and appointed officers of said city to act until their successors were duly elected and qualified. That thereafter, said city did proceed to exercise corporate functions by electing officers levying and collecting city taxes, passing ordinances, and voting city bonds and generally exercising the powers of a municipal corporation. The judgment

recited that this action was brought on the 2nd day of March, 1953, and that the state of Missouri and relators herein were barred by laches from prosecuting this proceeding and relators were estopped from maintaining this action.

In Pearson Drainage Dist. v. Erhardt, 239 Mo.App. 845, 201 S.W.2d 484, 491, this law was stated:

"The only remaining question is whether defendant is estopped by reason of his own acts, and particularly by reason of the acts of Erhardt, his predecessor in title, from attacking the district's existence as a legal entity with capacity to levy and collect the taxes for which it sues in this proceeding.

"The basis of the district's contention in this respect is that Erhardt was one of the signers of the petition for incorporation; that he attended subsequent meetings of the landowners in the district; and that Devine, having purchased the land with knowledge that Erhardt had been one of the promoters of the district and had participated in its attempted organization, is himself subject to the legal consequences of Erhardt's recognition of the district's corporate identity.

"The principle of estoppel now under consideration is entirely separate and distinct from the doctrine of de facto corporations. In other words, a corporation de facto cannot be created by estoppel, but instead the only effect of an estoppel, where the requisite facts exist, is to prevent the question from being raised. 18 C.J.S., Corporations, § 108; 13 Am.Jur., Corporations, sec. 63. Nor, where the principle of estoppel may be applied, is it necessary that the corporation actually exist de facto in order to estop an adversary party from questioning its corporate existence. This for the reason that if estoppel was in all events limited to de facto corporations, the doctrine would then be wholly unnecessary, since in such a case the same ultimate result would be reached by application of the rule which precludes a private individual from making a collateral attack upon the corporation's legal existence. 18 C.J.S., Corporations, § 111 h." Reinhard v. Virginia Lead Mining Co., 107 Mo. 616, 18 S. W. 17.

The sole issue presented to this court for opinion, is the question of estoppel. Were the relators guilty of laches which would estop them from questioning the invalidity of the corporation? The trial court found they were.

The fourth contention made by relators is that the trial court erred in admitting and considering testimony concerning acts of the purported city of Exeter occurring after May 25, 1950, (the date of the filing of the original action attacking the validity of the incorporation of the City of Exeter) for the purpose of showing a basis for estoppel or laches.

Objection was made to the answer of the witness as to what the first ordinance was about on the ground that the ordinance book was in evidence and was the best evidence. This objection was overruled.

Thereafter without objection the witness was permitted to testify in detail to ordinances from 2 to 36. It is not shown whether the witness was reading from the ordinance or from the minute book but no objections were made to all of this testimony. There was an objection made to ordinance 36, after it was answered, which the witness stated was an ordinance for the levying of taxes for the year 1951. Relators' attorney objected to this evidence as being immaterial to show estoppel and laches. It was stated that anything that happened after this litigation commenced was immaterial. It was called to the court's attention that the litigation started May 2, 1953, and then the relators stated that the litigation started May 19, 1950. This objection was overruled.

Defendants then offered an unnumbered ordinance for the levy of city taxes for the

year 1950 which showed that 65¢ was levied and then relators made this objection:

"I would like to let the record show my objections continuing to all these ordinances after May 25, 1950.

"The Court: The record will so show."

Relators' theory upon which objection was made to evidence offered after May 25, 1950, is that acquiescence is necessary to show estoppel and that after that date relators were questioning the legality of defendants' right to act as officials of said incorporation and that any acts performed by the city after May 25, 1950, would not be admissible to show laches.

An examination of the record, however, shows that at the time of relators' objections to the admissibility of testimony, showing acts of acquiescence on the part of relators to the carrying on of the city government, there was no evidence that relators had ever questioned the validity of the organization of the city. At the end of the testimony a certified copy of the petition filed in another action by relators questioning the validity of the city charter was offered in evidence.

The court's judgment, rendered June 13, 1955, in part, reads:

"The Court finds that this action was brought on the 2nd day of March, 1953.

"The Court finds that the State of Missouri and relators herein are barred by laches from prosecuting this proceeding, and that they are hereby estopped from maintaining this action."

The judgment of the court stated that Exeter was incorporated by the county court December 31, 1946, and officers were appointed to conduct the affairs of the government until successors were elected and qualified, and the court then made this statement:

"That thereafter, said city did proceed to exercise corporate functions by electing officers, levying and collecting City taxes, passing ordinances, and voting City bonds, and by generally exercising the powers of a municipal corporation."

The evidence did show that city ordinances were enacted by the mayor and aldermen of said city purporting to act in the city's behalf touching city affairs as set out in defendants' answer; that not only did relators, who were at the time citizens within the alleged corporate limits of Exeter, acquiesce in the carrying on of the city affairs but every one of them voted in city elections. Many of the relators did sign the petition and participate in securing the incorporation of Exeter by the county court. At least from the date of incorporation, in 1946, to May 25, 1950, there was no objection made to the acts of the mayor and councilmen in carrying on the city affairs. Objections were brought about when the ordinance was passed for a bond issue of $35,000 to build waterworks, which bonds were voted by the citizens of Exeter. It was at that time that relators filed an action to enjoin the carrying out of such bond issue because of the illegality of the incorporation. We think that the objections made by relators to the offering of evidence to establish laches on their part after they had instituted proceedings questioning the authority of the officers to act after May 25, 1950, should have been sustained if relators had offered evidence that they had actually started proceedings questioning the incorporation of the city and the right of the defendants to act as officers of such city. Actually we are unable to determine from the record what testimony the trial court considered in rendering his judgment. We believe, however, there was sufficient testimony offered showing relators' acquiescence and participation in the securing of the incorporation of Exeter by the county court and in the further conduct of the affairs of the city prior to May 25, 1950, to show laches on their part, which would estop them from maintaining this action. State ex Inf. Otto ex rel. Harrington v. School Dist. of Lathrop, 314 Mo. 315, 284 S.W. 135, 139.

Error is assigned as to the action of the trial court in considering oral testimony concerning acts of said city which could be accomplished by the Board of Aldermen who may act by proper ordinance and which action must be shown only by the minutes and ordinances to be maintained by a mandatory statute.

■ This assignment of error is wholly insufficient to preserve anything for review. No specific evidence or ruling is pointed out and the assignments contain no reference to any specific portion of the record where the evidence or erroneous ruling may be found. Supreme Court Rule 1.08(a) (3) and (d), 42 V.A.M.S.; School District of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51, 54(7); Alford v. Thomas, 236 Mo.App. 1099, 162 S.W.2d 356, 357; Nibler v. Coltrane, Mo.Sup., 275 S.W.2d 270, 274.

Relators' assignment of error No. 6 states: "The mass of loose papers purporting to be ordinances of the City of Exeter were not enacted in the manner required by statute and are invalid as ordinances or actions of the City and it was error for the court to consider them".

■ We, likewise, hold this assignment of error preserves nothing for review for the reasons stated under alleged error No. 5.

■ Allegation of error No. 7 is an abstract statement of law. There is no record evidence to support this allegation. Dansker v. Dansker, Mo.App., 279 S.W.2d 205; Supreme Court Rule 1.08.

■ Allegation of error No. 8 is, likewise, an abstract statement of law. No-

where is it pointed out that the court violated this principle of law.

■ Allegation of error No. 9 to the effect that the finding and judgment of the trial court is against and contrary to the weight of the evidence preserves nothing for review. Supreme Court Rule 1.08; De Voto v. Fez Construction Co., Mo.App., 271 S.W.2d 199; Liddle v. Collins Construction Co., Mo.Sup., 283 S.W.2d 474, 479; Romandel v. Kansas City Public Service Co., Mo.Sup., 254 S.W.2d 585.

Judgment affirmed.

STONE and RUARK, JJ., concur in the result.

RUARK, Judge.

I concur in the result. I believe the appellants are barred by estoppel and laches.

I am dubious of the statement in the opinion in reference to the admissibility of acts of the appellants after May 1950 (when the first proceedings to attack the incorporation were commenced). It seems to me that if the parties participated in the government of the city after the proceeding in 1950 such acts might under certain circumstances be admissible to show estoppel.

I am also dubious of the statement to the effect that assignment number 9 presented nothing for review. I do not see how, in a court tried case, the appellant can conveniently raise the question of weight of the evidence without making the assignment general unless he burdens his points with what would amount almost to a review of the whole evidence.